## STATE OF INDIANA v. FORSYTH.

[No. 12,971. Filed July 17, 1928. Rehearing denied December 18, 1928. Transfer denied June 12, 1931.]

*Arthur L. Gilliom* and *James M. Ogden,* Attorney-Generals, *Edward M. White* and *Charles F. Werner,*

Assistant Attorney-Generals, and *Joseph W. Hutchinson*, Deputy Attorney-General, for the State.

*Gavit, Hall, Smith & Gavit* and *Townley, Wild, Campbell & Clark,* for appellee.

ENLOE, P. J.—This action was brought by the appellant against the appellee, and thereby appellant sought to have its title to certain lands quieted. Appellee answered by a general denial, and she also filed a cross-complaint seeking to have her title to said lands quieted as against the claims of appellant. An answer in denial to the cross-complaint closed the issues, which were submitted to the court for trial, with a request for a special finding of facts and conclusions of law. From a judgment based upon conclusions adverse to appellant, this appeal is prosecuted. The questions presented relate to conclusions of law stated and to the action of the court in denying a new trial.

The lands in question were what we know as "swamp lands," and, as such, were donated by the federal government to the State of Indiana, by an act of Congress in 1850 (43 USCA §§982-984), and thereafter, in March, 1853, duly conveyed to the State by patent. The lands in controversy lie between the *present* shore line of Wolf Lake and what was the shore line of said lake at the time the State executed its patents, as hereinafter set out— land which, at the time said patents were executed, may be said to have been covered by the water of said lake. It is the contention of the State that the grantees from the State took only to the "meander line," with no riparian rights, while it is the contention of the appellee that, under those grants from the State, her remote grantees took as riparian owners; that she, as the present owner, succeeded to all rights granted to them, and is, therefore, the rightful owner of said lands. Counsel for the State, upon oral argument, frankly stated that, if the

grantees from the State, under those grants, took as riparian owners, there was no foundation upon which this case could rest; that that was the end of this case.

The following map, a copy of the survey made by the United States surveyors in 1834, will aid to an understanding of the facts involved herein.

The facts found by the trial court, so far as the same are material to the decision of this case, are, in substance, as follows: The United States was the owner of all the lands in the east half of section one, township 37 north, range 10 west of the second principal meridian, in Lake County, Indiana, in 1834. Some of the land was dry

and some of it was covered with water, which formed a part of what was known as "Wolf Lake." During said year, the federal government caused said lands to be surveyed and a plat thereof to be made. See map. In making said plat, said section 1 was fully surveyed, and Wolf Lake was shown on said plat as a nonnavigable lake extending through said section 1, which lake was then, and has remained ever since, nonnavigable. Upon said plat the meander lines of said lake were drawn and shown, which meander lines marked the then shore or water line of said lake, which lake has since become known as "Wolf Lake." The land in the east half of said section 1, was platted into lots and numbered one, two and three, and the acreage in each of said lots of the land therein above water line was shown, respectively, on said plat. In 1850, the United States, by what is known as the Swamp Land Act, donated to the State of Indiana all the swamp and overflowed lands in this state, and, in 1852, the Governor of Indiana, pursuant to law, selected, as swamp and overflowed lands all of said section 1 and applied to the United States Government for a patent therefor, which patent for said lands was issued in March, 1853.

It was also found that, thereafter, the State of Indiana, in *strict compliance* with all legislative provisions therefor, caused said lands in said section 1 to be platted preparatory to selling the same, which platting by the State fully surveyed said lands (section 1), and was identical with the platting as made by the United States of said lands, and that, upon the plat so made by the State, the meander lines drawn and shown marked the then shore or water line of said lake; that thereafter, in compliance with all the requirements of the laws of the State relating to the sale of such lands, the State executed its patents to one James Stanton, conveying to him "the East half of the Northeast quarter" of said section 1, the land

conveyed being the land or tract shown and designated upon the said plat as "Lot 1;" that thereafter, the State issued its patents to George W. Clark, for lots two and three, and that the appellee is the owner by mesne conveyances of said lots one, two and three. It was also found by the court, as stipulated by counsel, that the waters of Wolf Lake had gradually receded since the time the survey was made, and that the land now in controversy, by reason of the receding of said waters, is now dry land. Many other facts are found, but, as we view this case, they are not of controlling influence, and are not, therefore, set out.

The crucial question in this case is: Did the State, by its said conveyances before noted, convey the lands to the water's edge, or practically so? If it did, then the grantees named in said patents took as riparian owners, and, upon this record, the appellee holds said lands as such owner.

In *Gary Land Co.* v. *Griesel* (1913), 179 Ind. 204, 100 N. E. 673, it was said: "When lands are granted according to an official plat of their survey, the plat with its notes becomes as such a part of the grant or deed by which they are conveyed, and as far as limits are concerned, controls as much as if such descriptive features were written out on the face of the deed or grant." In that case, it was also said that "in case of a variance between the plat and the field notes, the former must control." Also there is evidence in this record that the waters of Wolf Lake rise and fall with the level of the water in Lake Michigan; that the water in Lake Michigan is lower now than formerly; that the water began to go down about 1900; that, as a result of the fall of the waters of these lakes, considerable land has been added to the lots in question, by reliction. These lands are, under the law of this state, the property of the owner of said lots 1, 2 and 3. *Mason* v. *Calumet Canal, etc., Co.*

(1898), 150 Ind. 699, 50 N. E. 85; *Hardin* v. *Jordan* (1891), 140 U. S. 371, 11 Sup. Ct. 808, 35 L. Ed. 428; *Mitchell* v. *Smale* (1891), 140 U. S. 406, 11 Sup. Ct. 819, 35 L. Ed. 422. In the case last cited—a Wolf Lake case—the court, speaking by Mr. Justice Bradley, said: "Our general views with regard to the effect of patents granted for lands around the margin of a nonnavigable lake, as shown by the plat referred to therein, to bind on the lake, were expressed in the preceding case of *Hardin* v. *Jordan,* and need not be repeated here. We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants of the beds of such lakes after selling and granting the lands bordering thereon, or represented so to be. It is nothing more nor less than the taking from the first grantee a most valuable and often *the* most valuable part of his grant. . . . The patents when issued refer to this plat for identification of the lots conveyed, and are equivalent to and have the legal effect of a declaration that they extend to and are bounded by the lake or stream. Such lake or stream itself, as a natural object or monument, is virtually and truly one of the calls of the description or boundary of the premises conveyed; and all the legal consequences of such a boundary, in the matter of riparian rights and title to land under water, regularly follow."

The appellant says that there is no evidence to support the finding that the State had said lands surveyed prior to selling the same, but we regard this contention, even if it be true that the State did not have said lands surveyed, of no controlling force. It is admitted that the State caused these lands to be platted prior to the time of said sale, and that the plat so made was identical with the plat made by the United States surveyors of the same lands, and showing the meander line of said lake to be practically identical with the shore line of said lake. The said plat itself is evidence of what was granted, and

that said grantees from the State took and held said lands as riparian owners.

Other errors are alleged in the matter of admitting certain testimony, but these rulings, even if erroneous, are not of controlling influence, and do not, therefore, call for further consideration.

We hold that the decision of the court is sustained by the evidence, and that the court did not err in its conclusion of law.

Affirmed.

Dausman, J., absent.