EARHART ET UX. *v.* ROSENWINKEL ET UX.

[No. 16,126. Filed February 14, 1940. Rehearing denied May 10, 1940. Transfer denied September 18, 1940.]

*Willard H. Earhart,* of Indianapolis; *John J. Boyle*

and *Lucy E. Upson,* both of Warsaw; and *Edwin H. Emerick,* for appellants.

*Seth A. Rowdabaugh,* of Warsaw, for appellees.

LAYMON, J.—This action was instituted by appellant George T. Earhart against appellees to quiet title to and for the possession of certain lands described in the complaint. Appellees answered by a general denial and also filed a cross-complaint seeking to have their title to certain lands, including all of the land to which appellant asked title, quieted and asking that appellant Nona Earhart, the wife of George Earhart, be made a party to the action. Upon leave granted by the trial court to appellant George Earhart, appellant Nona Earhart was made a party plaintiff. The cause was submitted to the court, resulting in a finding and judgment adverse to appellants and in favor of appellees upon their cross-complaint. In due time appellants moved for a new trial upon the grounds that the decision is not sustained by sufficient evidence and is contrary to law. The motion was overruled and this appeal perfected. Appellants have assigned as error the action of the trial court in overruling their motion for a new trial.

The subject of controversy is the ownership of a strip of land in the southeast fractional quarter of Sec. 12, Twp. 33 N., R. 5 E., in Kosciusko county, Indiana, lying immediately south of the water's edge of Tippecanoe Lake, which extends over the north part of said sectional quarter.

It appears that in the year 1902, Jacob Himes and his wife, by deed of conveyance, conveyed to Luetta Borders a tract of land containing 135.26 acres. The conveyance also included a part of the southeast frac-

tional quarter of Sec. 12, Twp. 33 N., R. 6 E., and included all of the lands involved in this controversy. It was stipulated by the parties that the deed of conveyance conveyed the fee simple title to Luetta Borders and that she was, on the date of the deed, the owner in fee simple title to the southeast fractional quarter of Sec. 12, Twp. 33 N., R. 6 E., Kosciusko county, Indiana, save and except certain tracts of land located in the south part of the quarter section, which are not here involved. In June of 1905, Luetta Borders and her husband, by warranty deed, conveyed to Silas Adams the following described real estate, to wit:

"Beginning at the northwest corner of the southeast fractional quarter of section No. 12 township No. 33 north range 6 east at the ordinary high water mark of Tippecanoe Lake at a willow tree and iron stake, running thence south 250 feet, thence in an easterly direction five hundred fifty ft. 550 to a point 250 ft. south of the ordinary high water mark of said Tippecanoe Lake thence north 250 feet to said ordinary high water mark of said lake, thence westerly following the meandering of said Tippecanoe Lake to the point of beginning."

In November of 1905, Silas Adams laid out and platted what he designated "Pleasant View," for the purpose of a private pleasure resort, dedicating the same real estate which he had previously acquired from Borders. The plat consisted of lots, streets, and alleys, the original of which was duly and properly recorded in the office of the recorder of the county wherein the real estate was located on February 5, 1906.

The following map, a copy of the plat made by Silas Adams, will serve as an aid to a better understanding of the facts.

PUBLIC ROAD

WEST

20
130 ft.

21
130'

22
130'

38⅓' 38⅓' 38⅓'

20 ft. Street

50 ft.

No. 1.

115 ft.

50'

2

115'

50'

3

115'

50'

4

115'

50'

5

115'

50'

6

115'

50

7

115'

50'

8

115'

50'

9

115'

50'

10

115'

50'

11

115'

50'

19

100'

50'

18

100'

50'

17

100'

50'

16

100'

50'

15

100'

50'

14

100'

50'

13

100'

50'

12

100'

15 ft. Alley

PEARL STREET 20 ft. wide

EAST

TIPPECANOE LAKE

It also appears from a copy of the original Government survey and from the facts not in dispute that the southeast quarter of Sec. 12, Twp. 33 N., R. 6 E., in Kosciusko county, Indiana, is a part of Government lot No. 4 and that it extends to the north far out into Tippecanoe Lake. A copy of the Government survey follows:

Tippecanoe Lake is a nonnavigable inland lake.

Lot No. 1, as platted in Pleasant View, was conveyed by Silas Adams to Pearl Reed and by her to appellee Walter F. Rosenwinkel. Lot No. 2, as platted in Pleasant View, was conveyed by Silas Adams to appellee Walter F. Rosenwinkel. Appellants secured from several predecessors in interest quitclaim deeds to "Lot [Government] No. 4 located in the southeast quarter of Sec. 12, Twp. 33, N., R. 6 east lying north of the high water mark of Tippecanoe Lake."

Appellants contend that they are the record owners of all of the land lying north of lots Nos. 1 and 2 in Pleasant View in the southeast quarter of said section 12. In support of this contention, they argue that the deed from Borders to Adams described the real estate as commencing at the ordinary high water mark of Tippecanoe Lake at a willow tree and iron stake and that the real estate described is exactly 250 by 550 feet; that the high water mark at a willow tree and an iron stake constituted a monument designated as the place of beginning and marked the northwest corner of the grant; that on "November 30, 1905, Silas H. Adams drove a stake into the ground, and he and all his grantees thereafter recognized this stake as the monument marking the northwest corner of Pleasant View Plat. After driving the stake he then used it as a starting point in laying out a parcel of ground 250 x 550 feet which he purchased. This stake also marked the northwest boundary of Lot 1 in Pleasant View plat. When he sold lot 1, he again observed the monument and sold a lot 115 x 50 feet beginning at .this monument, and he never included any ground north of the iron stake"; and that the iron stake and willow tree are considerably south of the water's edge on dry

ground, leaving some 40 feet of dry land which appellants contend lies north of appellees' lots.

On the contrary, appellees argue that they are the record owners of lots Nos. 1 and 2 in Pleasant View and that such ownership carries with it all of the land to the quarter section line, together with riparian rights; that consequently there is no land lying north of said lots 1 and 2 in said quarter section. Appellees contend further that if there exists any strip of land between lots 1 and 2 and the water's edge, they have become the owners by adverse possession.

In view of the contentions made by the parties that they are each the record owners of the lands in controversy, it becomes necessary to determine whether or not the grant from Borders to Adams conveyed to the grantee riparian rights in the land conveyed. In arriving at a conclusion, however, it is not necessary to decide whether the north boundary of appellees' land extends to the quarter section line ·or to the thread of the lake.

In examining the description contained in the deed from Borders to Adams, it will be observed that the beginning point first mentioned is "the northwest corner of the southeast fractional quarter of Sec. 12." This point is far out into the lake. The description continues, "at the ordinary high water mark of Tippecanoe Lake at a willow tree and iron stake," then proceeds by metes and bounds in distances of feet to lay out a parcel of ground in the opposite direction of the lake, concluding with, "thence westerly following the meandering of said Tippecanoe Lake to the place of beginning."

It is important to note that the grantor designated two different monuments as the place of beginning, one

at the northwest corner of the southeast fractional quarter of section 12, and the second at the "ordinary" high water mark of the lake at a willow tree and iron stake. (Assuming these three markers were at the same point.)

The question in the last analysis depends upon what construction should be placed upon the description contained in the deed, aided by the intention of the grantor of the land conveyed. The general rule in regard to the construction of the description of the premises in a deed is one of the utmost liberality. The intent of the parties, if it can by any possibility be gathered from the language employed, will be effectuated. *Koons* v. *Burkhart* (1918), 68 Ind. App. 30, 119 N. E. 820, and cases cited. When that intention is manifested in express terms, there remains no room for presumptions, and the grantee will be governed by such expressed intentions. To this extent rules of construction are inoperative. When, however, the intent is not expressed, our courts have indulged the presumption that, unless a contrary intention appears or is clearly inferable from the terms of the deed of conveyance, the grantee of land bounded by a nonnavigable stream or river, and, in the majority of cases, by lakes and ponds, acquires the title to the land to the center or thread of the water, on the theory that the grantor will not be presumed to have reserved a strip of land covered by water which will be of no practical value to him, particularly in the absence of a way of access thereto. However, this presumption is merely a principle of interpretation adopted for the purpose of finding out the true meaning of the words used. This presumption is founded on a rule of public policy which discourages the separation of the title of land and of adjacent strips in the beds of highways

which after remaining in abeyance for years may become the occasion of litigation, vexing and harassing those who in good faith had bought the land without the strips and had supposed themselves secure from such embarrassment. Such presumption is invoked except when it clearly appears from the language of the conveyance that the contrary was actually intended and may be rebutted by proof of the establishment of monuments which may limit or restrict the boundary.

Apart from some exceptional cases, it may be said that the presumption is so strong that, unless very clearly confined within other limits by the terms of the grant, the title of each owner of lands bordering on a fresh water or nonnavigable river will be considered as extending to the thread in its middle. *Ryan* v. *Brown* (1869), 18 Mich. 196, 100 Am. Dec. 154; *Fulton Light, Heat & Power Co.* v. *New York* (1911), 200 N. Y. 400, 94 N. E. 199.

The law with respect to public highways and non-navigable streams is substantially the same in respect to the presumption as to the boundaries of grants of lands bordering on them.

Numerous and well-considered cases support the doctrine that a grant of land adjacent to a nonnavigable lake or river carries title to the thread thereof, unless the contrary clearly appears or is necessarily implied. *Ridgway* v. *Ludlow* (1877), 58 Ind. 248; *Sphung* v. *Moore* (1889), 120 Ind. 352, 22 N. E. 319; *Stoner* v. *Rice, Auditor* (1889), 121 Ind. 51, 22 N. E. 968; *Brophy* v. *Richeson* (1894), 137 Ind. 114, 36 N. E. 424; *Sizor* v. *City of Logansport* (1898), 151 Ind. 626, 50 N. E. 377; *State* v. *Tuesburg Land Co.* (1916), 61 Ind. App. 555, 109 N. E. 530, 111 N. E. 342; *State* v. *Forsyth* (1931), 92 Ind. App. 513, 162 N. E. 661. For further

discussion of cases bearing upon this subject see 74 A. L. R. 597.

In the instant case, if no reference had been made by the grantor Borders in the description of the land conveyed to any artificial monument, the grantee would have taken title to the land as a riparian owner, with the right to the land as the water receded within the boundary lines of the subdivision conveyed, and acquired title to all of the land within the division, though it was described as a fractional subdivision. *Stoner* v. *Rice, Auditor, supra.*

Appellants insist, however, that the iron stake, willow tree, and high water mark were monuments recognized by the parties as such, and that consequently appellees' north boundary is governed and determined by such monuments and not by the northwest corner of the southeast fractional quarter of said section 12.

Under the principle that where some particulars of the description in a deed do not agree, those which are uncertain and more liable to error and mistake must be governed by those which are more certain. Various rules for the interpretations of descriptions of the location and boundary of lands have been evolved and are now frequently referred to in interpreting grants and deeds. Accordingly an order of precedence has been established among different calls for the location of boundaries of land, and, other things being equal, resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries, and thereafter to courses and distances. Natural objects, of course, include mountains, lakes, rivers, etc., whereas artificial monuments and objects consist of marked lines, stakes, and similar matters marked or placed on the ground by the hand of man. Wherever a natural object is distinctly

called for, and satisfactorily proved, it becomes a landmark to which preference must be given, because the certainty which it affords excludes the probability of mistake.

The courts in many states have recognized a distinction between monuments called for as locating boundaries on land and boundaries along watercourses, in that it is not always practicable to locate monuments in the channels of rivers. Accordingly the rule has been established that there is no presumption that monuments mentioned in a deed as occupying the bank of a river are intended by the parties as being exactly located and as standing at the water's edge. Instead the monuments may be referred to as merely indicating the location of lines which intersect the stream, and which should be continued beyond the monument to the water's edge. Therefore although a boundary is said to run along a stream, and monuments are mentioned which occupy its bank, this does not necessarily limit the grant to the bank, and the running of a boundary line by courses and distances along the bank of a river will not prevent the water from being the boundary in accordance with the general rules regulating boundary lines on navigable and nonnavigable rivers. *Grand Rapids Ice & Coal Co.* v. *South Grand Rapids Ice & Coal Co.*, 102 Mich. 227, 60 N. W. 681; *Railroad Company* v. *Platt*, 53 Ohio St. 254, 41 N. E. 243. See also *Illyes* v. *White River Light, etc., Co.* (1911), 175 Ind. 118, 93 N. E. 670.

For the above reasons, we conclude that the description of the premises in the deed of conveyance from Borders to Adams carried the grantee's title, with riparian rights, at least to the water line of Tippecanoe Lake, if not to the quarter section line. This being true, the subsequent platting of the same lands by

294

Adams and the conveyances of lots 1 and 2 in the plat carried the same rights.

Judgment affirmed.

NOTE.—Reported in 25 N. E. (2d) 268.