James E. BAKER, D.D.S. and Sharon L. Baker, his wife, Appellants (Plaintiffs Below),

v.

The ESTATE OF Marshall H. SEAT, Tim Seat and Maryanne Seat, Co-Executors, Appellees (Defendants Below).

No. 51A04–9112–CV–430.

Court of Appeals of Indiana, Fourth District.

March 29, 1993.

Steven E. Ripstra, Lytton & Ripstra, Jasper, for appellants.

Blake Chambers, Fitzpatrick, Chambers, Waller, Leonard & Hanson, Washington, for appellees.

MILLER, Judge.

This dispute arose from what once was a friendly, neighborly joint land venture. James Baker and Marshall Seat owned as tenants in common approximately 55.5 acres of real estate upon which a lake is located. In 1964, they and their wives entered into an agreement which provided that upon the death of Seat or Baker, the surviving male would have the absolute right to purchase the decedent's undivided interest—providing the decedent's spouse wished to sell. In 1987, following the death of Seat's wife, the Bakers and Seat conveyed two small parcels of the property (which are homesites totalling approximately 5.7 acres) to each other in fee simple.

Soon thereafter, Seat died. The Bakers claim they have the absolute right to purchase from Seat's Estate both the 2.4718 acre tract of land they deeded to Seat and Seat's undivided interest in the remaining 50 acres of undeveloped land. The trial court granted summary judgment in favor of the Bakers enforcing the agreement which allowed them the absolute right to purchase the real estate held in tenancy in common by the Bakers and Seat. Summary judgment was entered in favor of Seat's Estate excluding the 2.4718 acre tract the Bakers conveyed to Seat from the terms of the agreement, and granting the Estate riparian rights appurtenant to the 2.4718 acre tract.

We affirm.

## FACTS

In March of 1964, Baker and Seat obtained title as tenants in common to 55.5 acres of reclaimed coal mining land located in Daviess County, Indiana, which contains an irregular-shaped, "coal-mining" lake approximately twenty (20) to twenty-five (25) acres in size. Baker and Seat bought the property to use as a weekend and summer recreational retreat for themselves and their families. In the same month, Baker, Seat, and their wives entered into a Purchase Option and Use Agreement (Agreement), which provides in relevant part:

> This agreement made and entered into this 31st day of March, 1964, by and between James E. Baker and Sharon L. Baker, husband and wife, parties of the 1st part, and Marshall B. Seat and Kath-

leen O. Seat, hereinafter called parties of the second part: Witnesseth:

Whereas: first parties are owners of an undivided ½ interest in and to the following described real estate situated in Daviess County, Indiana, [legal description of the real estate], and the parties of the second part are the owners of the other undivided ½ interest in said real estate, to, wit:

and whereas the parties desire to enter into an agreement for the joint control, maintenance, and operation of said real estate on the basis of equal shares, therefore, it is mutually agreed as follows:

1. All costs of the property, such as maintenance, taxes, fencing, gates, etc., shall be borne equally by both parties, if mutually agreed upon with the following exception that any dwelling on said property shall be considered the individual property of the builder, and shall be assessed, taxed, and maintained by the owner.

2. In the event of a determination by one party to dispose of his interest in said real estate, he shall first offer to sell that interest to the other party at a price upon which they can mutually agree....

3. In the event of the death of either of the male parties, the surviving male party shall have the absolute right to purchase the undivided interest of the deceased party and his spouse providing spouse wishes to sell. The sales price in this event shall be determined as follows: the successor to the interest of the deceased party (his widow, if she survives him, or his personal representative, if she does not survive) shall appoint one appraiser, the surviving male party shall appoint one appraiser, and the two appraisers so chosen shall appoint a 3rd appraiser. These 3 appraisers shall determine the fair market value of the entire fee simple estate in said real estate and ½ of this amount shall be the selling price at [sic] the undivided ½ interest of the deceased party.

R. 41.

Later, Baker and Seat both constructed cabins near the lake, and maintained separate docks near their cabins. The families used the lake for swimming, boating, water skiing, and fishing. They enjoyed the property and each other's company. In 1972, Baker and Seat executed a deed conveying an undivided one-half interest in the property to Baker and Sharon Baker, husband and wife, and another deed conveying an undivided one-half interest to Seat and Kathleen Seat, husband and wife.

Around 1986, Baker retired. He razed his cabin and built a permanent residence on the same site. In November, 1987, after Seat's wife died, reciprocal quitclaim deeds were executed. Seat quitclaimed his interest in a 3.2349 acre tract of real estate surrounding the Baker home to the Bakers, as husband and wife. The Bakers, as husband and wife, quitclaimed their interest in a 2.4718 acre tract of real estate surrounding the Seat cabin to Seat.

The 3.2349 and 2.4718 acre tracts abut the lake. The description contained within both of the quitclaim deeds describes the boundaries of the tracts as running "to the water edge of the coal mining lake" and "with said water edge." The deeds contain the restriction that only a single-family dwelling may be built on the tracts. Neither deed contained a reference to the Agreement, or to riparian rights.

Following Seat's death in 1988, the Bakers notified the Estate that they wished to exercise their right to purchase Seat's undivided interest in the real estate—which the Bakers contend includes the 2.4718 acres homesite quitclaimed to Seat. The Estate refused to sell.

The Bakers raise two issues for review. The Estate cross appeals raising two additional issues. We regroup and rephrase the issues as whether the trial court erred in summarily finding that: 1) Baker has the right to purchase Seat's interest in the approximately 50 acres of real estate held in tenancy in common at Seat's death; 2) the 2.417 acre tract containing the Seat homesite was not part of the property held in tenancy in common; 3) the Agreement was unambiguous and, as a result, did not give the Estate an election to retain the

real estate; and 4) riparian rights were appurtenant to the 2.417 acre tract.

## DECISION

■ Construction of an unambiguous written contract is generally a question of law for the court, making summary judgment particularly appropriate. *Bicknell Minerals, Inc. v. Tilly* (1991), Ind.App., 570 N.E.2d 1307, 1313, *reh'g denied, trans. denied* (1992). A contract will be found to be ambiguous only if reasonable persons upon reading the contract would differ as to the meaning of its terms. *Indiana–Kentucky Electric Construction Inc. v. Green* (1985), Ind.App., 476 N.E.2d 141, 145, *reh'g denied, trans. denied*. In reviewing a motion for summary judgment, we apply the same standard as the trial court. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562; *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 414.

Also, in summary judgment proceedings, the burden of production is on the moving party to show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Pour v. Basic American Medical, Inc.* (1990), Ind.App., 555 N.E.2d 155 *reh'g denied*. The nonmoving party may rest upon his pleadings until the moving party establishes that no genuine factual issue exists. *Chrome Deposit Corp. v. Indiana Dept. of State Revenue* (1990), Ind.Tax, 557 N.E.2d 1110 *aff'g sub nom.* (1991), Ind., 578 N.E.2d 643. At this point, the burden of production shifts to the nonmoving party whose response must set forth specific facts indicating that there is an issue of material fact. *Id.* Thus, he may not rest upon bare allegations made in the pleadings, but must respond with affidavits or other evidence setting forth specific facts showing that there is a genuine issue in dispute. *Sutton v. Sanders* (1990), Ind. App., 556 N.E.2d 1362; *Willsey v. Peoples Federal Sav. & Loan Ass'n of East Chicago* (1988), Ind.App., 529 N.E.2d 1199. If the nonmoving party fails to meet this burden, then summary judgment in favor of the movant is appropriate. *Chrome Deposit Corp., supra; Rogers v. R.J. Reynolds Tobacco Co.* (1990), Ind.App., 557 N.E.2d 1045 *reh'g denied.*

The Bakers claim the trial court erred by finding that the parties demonstrated a mutual consent to abandon the Agreement as it pertained to the two homesite tracts. The Estate on cross-appeal claims the trial court erred in finding that Baker and Seat abandoned the Agreement only as to the two homesites.

### I.

■ Turning first to the Estate's cross-appeal, it is the Estate's contention that conveying the tracts in fee simple by deeds which did not reference the Agreement was inconsistent with the Agreement. The Estate, citing 17A Am.Jur.2d *Contracts* § 543 (1991), argues that as a matter of law, these acts constitute abandonment or rescission of the Agreement. 17A Am.Jur.2d *Contracts* § 543 (1991) cites *Dault v. Schulte* (1971), 31 Mich.App. 698, 187 N.W.2d 914, 915, which states the law of abandonment:

> The abandonment of a contract is a matter of intention to be ascertained from the facts and circumstances surrounding the transaction from which the abandonment is claimed to have resulted. An abandonment of a contract need not be express but may be inferred from the conduct of the parties and attendant circumstances. *A contract will be treated as abandoned when the acts of one party, inconsistent with the existence of the contract, are acquiesced in by the other party.*

> Abandonment of a contract is a mixed question of law and fact; what constitutes an abandonment is a question of law; and whether there has been an abandonment is a question of fact. (Emphasis added).

In *Dault*, a builder brought an action against a tavern owner to recover a portion of his costs in constructing a tavern. The parties entered into a written contract to construct the tavern for $38,664.24. During construction, the owner made several changes in the contract—i.e., added a ban-

quet room and fireplace, and paid the builder more than the contract price—to which the builder acquiesced by incorporating the changes and accepting payment. Before the tavern was completed, the tavern owner refused to pay the builder any sums in excess of $43,000, and the builder refused to complete the project. The court held that evidence that the owner changed the plans and that the builder acquiesced by incorporating the changes supported the finding that the parties abandoned the contract. The court awarded the builder $3,123.95—his construction costs of $5,394.08 minus $2,270.13 awarded on owner's counterclaim.

Here, unlike *Dault*, evidence that the parties conveyed the two homesites to one another was not inconsistent with the existence of the Agreement. Inconsistent means "mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one implies the abrogation or abandonment of the other." *Black's Law Dictionary* 907 (4th ed. 1968). The Agreement contemplated that a party might desire to dispose of his interest in the real estate. In this event, that party must first offer his interest to the other party. Deeding the two homesite tracts to one another was consistent with the spirit of the Agreement. Seat disposed of his interest in the 3.2349 acre tract upon which the Bakers' home was located to the Bakers, and the Bakers disposed of their interest in the 2.4718 acre tract upon which Seat's cabin was located to Seat. Moreover, leaving approximately fifty (50) acres in status quo—as an undivided interest—is also consistent with the Agreement. The parties did not abandon the Agreement. The trial court properly granted summary judgment in favor of Baker enforcing the Agreement as it pertained to the real estate held in tenancy in common.

## II.

■ The 2.4718 acre tract is not part of the undivided interest—or tenancy in common property—Baker is entitled to purchase. By definition, real estate is "undivided" when owned by two or more tenants in common. *Turner v. Deming* (D.C.Cir. 1946), 155 F.2d 181, 182 *cert. denied*, 329 U.S. 727, 67 S.Ct. 80, 91 L.Ed. 629. Tenancy in common is not an estate, but rather a relationship between people. 86 C.J.S. *Tenancy in Common* § 1 (1954). At the time of the 1964 Agreement, Baker and Seat each held an undivided one-half interest in the 55.5 acres as tenants in common. The deeds removed the homesite tracts from the undivided one-half interest—the tenancy in common—and placed the tracts of land in the exclusive fee ownership of the Bakers and Seat respectively. The legal effect of the deeds removed the tracts from the subject matter of the Agreement.

## III.

■ The Estate claims the trial court erred in finding the Agreement was unambiguous and, as a result, concluding that the Estate could not elect to retain the undivided one-half interest in the real estate. The Agreement provides that in the event of the death of either Baker or Seat, "the surviving male party shall have the absolute right to purchase the undivided interest of the deceased party and his spouse *providing spouse wishes to sell.*" R. 41 (emphasis added). The next sentence of the clause pertains to the procedure for determining the sales price in the event the property is sold. Under the clear and unambiguous terms of the Agreement, only the respective spouses, not the Estates, had the right to retain the undivided interest in the event of a husband's death. The trial court did not err.

## IV.

■ Lastly, the Bakers claim the trial court erred in awarding the Estate riparian rights appurtenant to the Estate's 2.4718 acre tract and concluding that the Estate could use the waters of the entire lake for recreational purposes consistent with the rights of the Bakers or their successors in title. A riparian owner acquires his rights to the water from his fee title to the shore land. *Brown v. Heidersbach* (1977), 172 Ind.App. 434, 360 N.E.2d 614, 619. When the intent of the parties is not expressed in the deeds, a strong presumption arises that "unless a contrary intention appears or is clearly inferable from the terms of the

deed of conveyance, the grantee of land bounded by a nonnavigable stream, river, lake, or pond acquires title [from the on-shore boundaries] to the thread or center of the water...." *Earhart v. Rosenwinkel* (1940), 108 Ind.App. 281, 25 N.E.2d 268, 272.

Here, the quitclaim deeds did not grant or reserve riparian rights. The deeds describe the boundaries of the two tracts as running "to the edge of the coal mining lake" and "with said water edge." R. 75, 76. The trial court correctly noted that riparian law is not clearly defined as it pertains to the facts of this case—a privately owned, man-made lake of irregular shape. We find the court properly analogized case law such as *Earhart, supra,* which establishes riparian rights on public waters with regular or straight shorelines. The Bakers did not present any evidence to rebut the presumption that Seat acquired title to a portion of the lake bed. The court did not err in concluding that riparian rights appurtenant to the Estate's 2.4718 acre tract include ownership of the lake bed to the farthest point of the dock extending perpendicularly from the shoreline of the Seat property as the dock and shoreline existed at the time of the 1987 conveyance. *Cf. Zapffe v. Srbeny* (1992), Ind. App., 587 N.E.2d 177, 180, *reh'g denied, trans. denied* (boundaries of riparian owners on public waters do not extend to the middle of the lake).

The court, in its effort to maximize the recreational value of the lake to both owners, concluded that the Estate had the right to use the waters of the entire lake consistent with the recreational use and rights of the Bakers. Here, too, the court properly analogized case law establishing that riparian owners on public waters are entitled to the use and enjoyment of the waters of the entire lake. *Bath v. Courts* (1984), Ind. App., 459 N.E.2d 72, 76.

Affirmed.

CHEZEM and ROBERTSON, JJ., concur.