**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**WILLIS E. HUIRAS**
Huiras Law
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**R. DAVY EAGLESFIELD III**
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LTC INVESTMENTS INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1301-PL-15 |
| | ) | |
| EGR INDIANA PROPERTIES, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1208-PL-18

**August 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In 2009, EGR Indiana Properties, LLC ("EGR"), agreed to purchase numerous tracts of land in Muncie from King Indiana Forge ("KIF"). KIF agreed to retain ownership of a portion of one tract. EGR and KIF agreed upon the boundaries for that carved-out parcel. A surveyor marked those boundaries with steel pins and wrote a new legal description of the parcel, which was included in the purchase agreement and the deed to the property that EGR purchased from KIF. The parcel retained by KIF was later conveyed to a succession of subsequent purchasers, and the series of deeds contained the same legal description of the parcel as that included in EGR's purchase agreement and deed.

In 2011, LTC Investments Inc. ("LTC") purchased the parcel. In 2012, LTC began erecting fenceposts beyond the eastern boundary of the parcel as described in the deed. EGR filed suit to enjoin LTC from trespassing on its property. Both parties filed motions for summary judgment. The trial court granted EGR's motion and denied LTC's motion. On appeal, LTC contends that the trial court erred in granting EGR's summary judgment motion. Finding no error, we affirm.

**Facts and Procedural History**

The relevant facts are undisputed. KIF owned numerous contiguous tracts of land comprising approximately twenty acres in Muncie. In 2009, EGR agreed to purchase those tracts, with the exception of a portion of Tract 20 that once housed an oil plant and underground storage tanks. Attorneys from EGR and KIF agreed on the boundaries for the carved-out parcel ("the Parcel") and conferred with Dickmeyer & Associates ("D&A"), a

surveying firm. A D&A surveyor conducted a retracement survey of KIF's property, set steel

pins to mark the agreed-upon boundaries of the Parcel, and prepared a new legal description

of the Parcel that referenced the pins as controlling monuments.[1] This legal description was

appended to the purchase agreement, pursuant to which KIF retained ownership of the

[1] A retracement survey is "a survey of real property that has been previously described in documents conveying an interest in that real property." Ind. Code § 36-2-19-3. A controlling monument is "any undisturbed artificial, physical, or record monument called for in a record plat or land title description and controls any combination of the: (1) location; (2) dimensions; or (3) configuration; of the described tract." 865 IAC 1-12-2(c). The legal description of the Parcel reads as follows:

A part of the Northeast Quarter of the Northeast Quarter of Section 15, Township 20 North, Range 10 East, Delaware County, Indiana, more particularly described as follows, to-wit: Beginning at the intersection of the centerline of Lincoln Street (as said street is laid out and platted in George Kirby Second Addition to the City of Muncie, Indiana) with the Southerly right of way line of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company as marked by a mag nail set in pavement and marked by a 2 inch aluminum disc stamped "D&A Firm No. 0026"; thence in an Easterly direction on and along the said Southerly right of way line bearing North 76 degrees 00 minutes 35 seconds East (bearing based on the bearing established on the centerline of Lincoln Street of South 6 degrees 33 minutes 25 seconds West as noted on survey), a distance of 50.86 feet to a five-eighths inch steel pin set with D&A Firm No. 0026 identification cap; thence South 86 degrees 23 minutes East deed (North 81 degrees 29 minutes 49 seconds East measured) 156.6 feet (deed and measured) to a five-eighths inch steel pin set with D&A Firm No. 0026 identification cap; thence South 58 degrees 38 minutes East (deed) South 18 degrees 22 minutes 24 seconds East measured 58.75 feet (deed and measured) to a point that is 223.61 feet East of the centerline of said Lincoln Street; (said point also being 70.8 feet South of the original right of way line of the said Railroad); thence Southerly and parallel with the centerline of said Lincoln Street (by deed), South 6 degrees 33 minutes 25 seconds West measured 158.36 feet (deed and measured) to a five-eighths inch steel pin set with D&A Firm No. 0026 identification cap; thence West and at right angles to the East described line 62.0 feet, more or less (deed), North 83 degrees 26 minutes 35 seconds West 6.2 feet measured to its intersection with a line 45.0 feet North of and parallel with the South line of Dudley Avenue extended Easterly, as said South line is platted in George Kirby Second Addition as marked by a five-eighths inch steel pin set with D&A Firm No. 0026 identification cap; thence Southwesterly 45.0 feet North of and parallel with the said South line of said Dudley Avenue (deed) South 79 degrees 17 minutes 31 seconds West (measured) 229.0 feet, more or less (deed and measured) to its intersection with the centerline of said Lincoln Street as marked by a mag nail set with a 2" aluminum disc stamped "D&A Firm No. 0026" identification cap on said centerline; thence North (deed) on the said centerline of said Lincoln Street North 6 degrees 33 minutes 25 seconds East 225.0 feet (deed and measured), more or less, to the place of beginning.

Appellee's App. at 23.

Parcel. In August 2009, KIF conveyed the tracts abutting the north, south, and east sides of the Parcel to EGR via a special warranty deed; the west side of the Parcel abuts Lincoln Street. The deed, which contains both the legal descriptions of the tracts purchased by EGR and the legal description of the Parcel retained by KIF, was filed with the Delaware County Recorder on September 10, 2009. Both the purchase agreement and the deed refer to EGR as "EGR Indiana Properties, LLC, an Indiana Limited Liability Company." Appellant's App. at 81, 92.

On September 21, 2009, KIF conveyed the Parcel to Troy Henson via a special warranty deed, which was recorded on September 30, 2009. The legal description of the Parcel in this deed is identical to the legal description of the Parcel in EGR's deed. On May 27, 2010, Henson conveyed the Parcel to Marla Whitaker via a quitclaim deed, which was recorded on June 2, 2010. The legal description of the Parcel in this deed is identical to the legal description of the Parcel in EGR's deed. In August 2010, Whitaker had Randall Miller & Associates ("RMA") perform a retracement survey of old Tract 20. On June 17, 2011, Whitaker conveyed the Parcel to LTC via a warranty deed, which was recorded that same day. The legal description of the Parcel in this deed is identical to the legal description of the Parcel in EGR's deed.

In July 2012, LTC began erecting fenceposts along a 200-foot north-south line approximately thirty-five feet to the east of the Parcel's eastern boundary as demarcated by the steel pins mentioned in the Parcel's legal description. EGR's Marvin Henderson told LTC's Ron Kibbey to stop erecting the fence. Kibbey told Henderson that if anyone

4

removed the fenceposts, he would have that person arrested. On August 1, 2012, a D&A surveyor located the steel pins delineating the Parcel's boundaries and marked them with wooden stakes, and he observed LTC's fenceposts to the east of the Parcel's eastern boundary.

On August 3, 2012, EGR filed a complaint for preliminary and permanent injunction against LTC, seeking to enjoin LTC "from entering onto, trespassing on EGR real estate abutting the southern, eastern, or northern boundaries of the real estate described in the June 17, 2011 Warranty Deed to LTC and the steel pins set by [D&A] marking the boundaries." *Id*. at 53. In its complaint, EGR stated that it "is a Michigan Limited Liability Company registered to do business in Indiana, and maintains its Indiana principal place of business at 500 S. Lincoln St. Muncie IN." *Id*. at 75. On August 9, 2012, the trial court held a preliminary injunction hearing and took the matter under advisement.[2] On September 19, 2012, LTC filed an answer and counterclaim, which does not appear in the record before us but apparently alleged that EGR committed fraud and abuse of process.

On September 21, 2012, EGR filed a motion for summary judgment. On October 22, 2012, LTC filed a response and a cross-motion for summary judgment in which it argued, among other things, that EGR "does not exist under Indiana law" because "[e]ven a cursory review of Indiana's Secretary of State website reveals there is no entity referred to as 'EGR Indiana Properties, LLC' in Indiana." Appellant's App. at 116. LTC also argued that "the

---

[2] The chronological case summary indicates that the trial court issued an order on request for preliminary injunction on August 16, 2012, but that order is not in the record before us.

5

RMA survey provides that Dickmeyer acknowledged errors in his survey!" and thus "Dickmeyer's survey is self-impeaching and frankly creates its own issue of fact as to its correctness." *Id*. at 118. Finally, LTC asked, "if [EGR] 'owned' the piece of real estate in question, why has it never paid any taxes on it?" *Id*. at 118.

In its response to LTC's cross-motion, EGR stated that the articles of organization it had originally filed with the Indiana Secretary of State in February 2010 listed its name as "EGR Reid Indiana Properties, LLC" and that it had recently amended the articles "so that the name of the LLC matches the name of [sic] the Special Limited Warranty Deed." *Id*. at 155.[3] EGR filed a motion to amend its complaint to show EGR as an Indiana LLC and not a Michigan LLC, which the trial court granted. Regarding the RMA survey, EGR argued, "What [LTC] ignores is that [KIF], by agreement with EGR, did not retain all of old Tract 20. Rather a new property description was marked out with controlling monuments and [KIF] only retained ownership to this new tract." *Id*. at 156. Finally, EGR stated, "The part of old Tract 20 that was deed[ed] to EGR is known for tax purposes as [X] and EGR has in fact paid property taxes on this parcel, contrary to [LTC's] allegations." *Id*.

On November 27, 2012, the trial court held a hearing on the summary judgment motions and other motions. On December 12, 2012, the trial court issued an order that reads in pertinent part as follows:

---

[3] EGR also noted that LTC was administratively dissolved in September 2009. Indiana Code Section 23-1-46-2(c) provides that "[a] corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under IC 6-8.1-10-9 and IC 23-1-45-5 and notify claimants under IC 23-1-45-6 and IC 23-1-45-7."

*Undisputed Facts and Conclusions on the Facts*

1.      [EGR] purchased real estate from [KIF] by a purchase agreement dated August 12, 2009.

2.      The Warranty Deed dated August 25, 2009, conveyed the real estate by the parties' proper names.

3.      An error occurred in filing the Articles of Organization for EGR. EGR has corrected the error. The Court finds the Plaintiff is the appropriate entity for filing this lawsuit and does exist as a legal entity in the State of Indiana. No genuine issue of material fact exists as to this issue, and EGR is the proper plaintiff in this action.

This finding resolves LTC's abuse of process claim as well as a matter of law. EGR is a proper entity to bring this action. EGR has not brought this action in bad faith.

4.      The Purchase Agreement specifically excluded certain property described on Exhibit C, "Lot 20." [KIF] retained title to Lot 20.

5.      On July 27, 2009, Dickmeyer & Associates Surveyors had prepared a survey for what it called "Tract 20." The survey for this "New Description" of Tract No. 20 used "D&A Firm No. 0026" identification tags placed with pins or nails in the ground to mark the boundaries for Tract No. 20.

6.      Tract 20 was conveyed by [KIF] to Troy Henson, and then by Troy Henson to Marla Whitaker, and then by Marla Whitaker to Defendant, [LTC], by deeds which used the same legal description as set forth [in] the Dickmeyer Survey.

7.      LTC now claims part of the real estate included within "Tract 20" as set forth in the Dickmeyer survey. LTC's claim fails as a matter of law.

8.      LTC designates as the issue: "the existence or not of evidence calling into question the boundary dispute between and among the parties."

9.      This is not a boundary line dispute between EGR and LTC. This case involves the property that LTC owns, and the property that EGR owns, per the legal description in the deeds that conveyed the property.

[KIF] and EGR agreed to divide up a tract of real estate and create a new legal description. [KIF] kept "Tract 20" as defined in the Dickmeyer Survey and then conveyed it, and eventually LTC came to own Tract 20 as defined in the Dickmeyer survey/legal description. All controlling monuments are still in place, and as a matter of law, the legal description as defined by the Dickmeyer [S]urvey and set out in the warranty deeds controls.

The boundaries of the real estate owned by LTC are undisputed and are identified by the controlling monuments in the recorded land description in the June 17, 2011, Warranty Deed, by which Marla Whitaker conveyed the real estate to LTC.

The property tax issue is not relevant to this dispute. It might be relevant if this were an adverse possession claim, but it is not.

10.    Plaintiff's Motion for Summary Judgment is well taken and should be granted. Defendant's Cross-Motion for Summary Judgment is not well taken and should be denied. The Court enters judgment in favor of Plaintiff and against Defendant as to the claims in Plaintiff's Complaint. The Court enters judgment in favor of Plaintiff and against Defendant as to the claims in the Defendant's Counterclaim.

….

14.    This judgment resolves all pending issues and claims in this case. It is a final and appealable judgment.[4]

### *Entry of Permanent Injunction*

15.    EGR has requested a permanent injunction. Having ruled in EGR's favor as to the claims in EGR's Complaint, and against LTC as to any claims LTC has made in this case, the Court now issues the following permanent injunction:

LTC shall not enter upon the neighboring property of EGR by crossing the boundary lines as defined by the controlling monuments (discs or pins) in the land description in the Warranty Deed between Marla

---

[4] LTC had also filed motions to compel, a motion to strike, and a motion to reconsider motion to assert third party claim, all of which the trial court denied in its summary judgment order. LTC does not appeal those rulings, nor does it specifically appeal the trial court's denial of its cross-motion for summary judgment.

Whitaker and LTC Investments Inc., which was executed and recorded in June, 2011.

LTC may enter to remove the fence posts, at LTC's expense, previously placed on EGR's property.

LTC shall remove the fence posts within 30 days from this order's date.

LTC shall make all reasonable efforts to prevent its customers, clients, and its Lessee or the Lessee's customers from trespassing onto EGR's property and shall not permit them to go beyond the boundaries of LTC's property onto EGR's property.

*Id*. at 4-6. LTC now appeals.

## Discussion and Decision

LTC contends that the trial court erred in granting EGR's motion for summary judgment. Our standard of review is well settled:

When reviewing a grant or denial of a motion for summary judgment our standard of review is the same as it is for the trial court. The moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. In determining whether summary judgment is proper, the reviewing court considers only the evidentiary matter the parties have specifically designated to the trial court. We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party.

*Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012) (citations and quotation marks omitted).

"Special findings are not required in summary judgment proceedings and are not binding on appeal. However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review." *Warren v. Warren*, 952 N.E.2d 269, 273 (Ind. Ct. App. 2011) (citation omitted). "A trial court's order on summary

9

judgment is cloaked with a presumption of validity; the party appealing from a grant of summary judgment must bear the burden of persuading this Court that the decision was erroneous." *Knight v. Indiana Ins. Co.*, 871 N.E.2d 357, 360 (Ind. Ct. App. 2007).

LTC first contends that EGR, which was not organized as an Indiana LLC until February 2010, "did not exist" in August 2009 when the purchase agreement with KIF was executed and therefore has no standing to litigate this property dispute. Appellant's Br. at 6.[5] Even assuming, as LTC suggests, that EGR does not have valid legal title to the property surrounding the Parcel, LTC has failed to cite any authority or designate any evidence indicating that EGR does not have an equitable interest in the property, pursuant to which it would have standing to enjoin LTC from trespassing. *See Harwood v. Masquelette*, 95 Ind. App. 338, 341, 181 N.E. 380, 381 (1932) (citing cases from Indiana and elsewhere for "the almost universally accepted rule that a deed to an immediate estate in land, made to a person not in being or a corporation not yet organized or having a valid existence, is a nullity and passes no title to anyone," but noting that "these decisions refer to the transfer of the legal title, and it is our opinion that they do not affect the equitable rights of the parties growing out of the transaction."), *trans. denied*; *Area Plan Comm'n, Evansville-Vanderburgh Cnty. v.*

---

[5] EGR touts the fact that its company name was reserved with the Indiana Secretary of State's office in June 2009, but it cites no authority for the proposition that the company legally existed prior to its organization in February 2010. EGR also asserts,

> The fact that Edward G. Reid, the member of EGR Indiana Properties, LLC, did not file forms creating EGR Reid Indiana Properties, LLC until February 2010 has no bearing as to the title to the land. Edward G. Reid would merely be treated as a sole proprietor for purposes of ownership and liability relating to the land, until the LLC was organized.

Appellee's Br. at 11. EGR cites no authority for this assertion.

10

*Hatfield*, 820 N.E.2d 696, 699 (Ind. Ct. App. 2005) ("Once a contract for the sale of land is executed, even before closing, equitable title vests with the prospective vendee. As holder of equitable title, the prospective owner is considered to have property rights sufficient to grant standing in other areas of Indiana law."), *trans. denied*; *Speedway Realty Co. v. Grasshoff Realty Corp.*, 248 Ind. 6, 9, 216 N.E.2d 845, 847 (1966) (noting the "well settled" premise that "'[i]f after it comes into existence, a corporation expressly or impliedly ratifies a contract made for its benefit by its organizers before it was formed, such contract becomes the contract of the corporation and it is entitled to the benefits thereof and is liable thereon.'") (quoting *Boatright v. Steinite Radio Corp.*, 46 F.2d 385, 388 (10th Cir. 1931)); *Chelan Cnty. v. Wilson*, 744 P.2d 1106, 1109 (Wash. Ct. App. 1987) (stating that a purchaser of real estate on contract "has the right to possession of the land, the right to control, the right to sue for trespass and may contest a suit to quiet title."); *SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005) (noting that injunction is an equitable remedy), *cert. denied* (2006). Consequently, LTC's standing argument is unavailing.

LTC also contends that a genuine issue of material fact exists regarding the location of the Parcel's boundaries. We agree with the trial court that those boundaries "are identified by the controlling monuments in the recorded land description in the June 17, 2011, Warranty Deed, by which Marla Whitaker conveyed the real estate to LTC." Appellant's App. at 5. In other words, the deed says what it says, and LTC has failed to establish that the alleged discrepancies between the D&A and RMA surveys have any bearing on the legal validity of the controlling monuments marking the Parcel's boundaries. *See Emmons v. Kiger*, 23 Ind.

11

483, 486 (1864) ("[T]he rule is well settled that in ascertaining boundaries, visible monuments, such as stones, trees, stakes, and the like, are held to control other designations not obvious to the senses. The south line of the section may be mistaken; a visible stake can not be …."); *Earhart v. Rosenwinkel*, 108 Ind. App. 281, 292, 25 N.E.2d 268, 272-73 (1940) ("Under the principle that where some particulars of the description in a deed do not agree, those which are uncertain and more liable to error and mistake must be governed by those which are more certain. Various rules for the interpretations of descriptions of the location and boundary of lands have been evolved and are now frequently referred to in interpreting grants and deeds. Accordingly an order of precedence has been established among different calls for the location of boundaries of land, and, other things being equal, resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries, and thereafter to courses and distances. Natural objects, of course, include mountains, lakes, rivers, etc., whereas artificial monuments and objects consist of marked lines, stakes, and similar matters marked or placed on the ground by the hand of man."), *trans. denied*. LTC's arguments to the contrary are either irrelevant, underdeveloped, or unsupported by persuasive authority.[6] Therefore, we affirm the trial court's grant of EGR's summary judgment motion.

---

[6] For example, LTC continues to insist that EGR has never paid taxes on the disputed property. As the trial court correctly observed, taxes would be relevant only for purposes of adverse possession, which is not at issue here. Also, LTC exclaims that "the RMA survey provides that Dickmeyer acknowledged errors in his survey!" Appellant's Br. at 12. LTC fails to specify what those errors are, let alone establish whether and how they affect the validity of the Parcel's boundaries as described in the deed. Finally, LTC asserts that "[t]his court could simply order an independent survey pursuant to statute," but fails to cite the purported statutory authority for this proposition. *Id*. at 13.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.