The CINCINNATI INSURANCE COMPANY, an Ohio Corporation, Appellant/Cross–Appellee–Defendant,

v.

BACT HOLDINGS, INC., an Indiana Corporation, Appellee/Cross–Appellant–Plaintiff.

No. 49A02–9904–CV–286.

Court of Appeals of Indiana.

Jan. 25, 2000.

Rehearing Denied March 3, 2000.

Michael E. Brown, Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, Indiana, Attorneys for Appellant.

Peter S. Kovacs, Stephen J. Peters, Stewart & Irwin, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

This appeal arises out of partial summary judgment entered in favor of the insured, BACT Holdings, Inc., ("BACT"). The suit arose out of a claimed breach of an insurance policy issued by The Cincinnati Insurance Company ("Cincinnati")

and Capitol Insurance Company. Cincinnati raises the following issue on appeal: whether the trial court erred in finding that the drum tire/drum mixer ring was covered under the insurance policy. On cross-appeal, BACT claims that the trial court erred in failing to award pre-judgment interest.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

BACT is a holding company that owns the majority of the stock in Circle City Asphalt Company, which operates an asphalt production facility in Indianapolis. The company produces asphalt products by mixing and applying heat to various raw materials consisting of aggregates, including limestone, sand, and liquid asphalt in its asphalt production plant. The production machinery used to manufacture the asphalt consists of multiple parts, but the subject of this appeal concerns the large mixing or production drum that is rotated by drum tires.

The drum tires circumscribe the outside of the mixing drum in two locations. They are held onto the surface of the drum with interlocking teeth attached both to the drum tires and to the surface of the drum. The drum tires' function is to carry the load of the machine and to transfer power from four external drive motors to the mixing drum, which causes the drum to rotate. Specifically, the gears from the motors transfer power through shafts and rollers, which are in contact with the drum tires, causing the tires to move and transfer power to the drum so it in turn rotates. The drum tires never come into contact with the asphalt being mixed inside the drum, and they do not supply or generate heat. The drum tires are removable and are sold separately.

On May 15, 1997, BACT employees noticed that one of the drum tires had developed a crack. The employees welded the crack back together, but another crack later developed causing the drum tire to completely fail and fall off the mixing drum. This failure caused BACT's entire operation to shut down until June 2, 1997.

After purchasing the facility in 1996, BACT began looking for insurance coverage in the event of a mechanical breakdown. Cincinnati sent a representative to visit the plant in order to examine the operation and recommend appropriate coverage. Cincinnati recommended that BACT purchase two types of coverage. The first was boiler and machinery coverage that covered mechanical and electrical failure, but excluded coverage on the producing equipment itself, except for specified equipment parts. The second type of recommended insurance was business interruption coverage. BACT obtained both types of coverage from Cincinnati.

The boiler and machinery portion of the coverage provided that Cincinnati would pay for "direct damage to Covered Property caused by a Covered Cause of Loss." *Record* at 21. According to the policy, a covered loss is defined as "an 'accident' to an 'object' shown in the Declarations." *Id.* The policy provides various definitions for the term "object," but the relevant portion of the policy provides that an "[o]bject means any ... 2. Mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power." *Id.* at 29. Coverage for an "object" is subject to a number of exclusions, including:

"16. Production or process machine or apparatus that processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in the process or finished products. But, 'object' does mean any:

   a.  Pressure vessel or vacuum vessel ... other than any cylinder containing a movable plunger or piston;

   b.  Pump, compressor, fan, or blower that conveys raw materials, materials in process or finished products;

c. Separate enclosed gear set connected by a coupling, clutch or belt; or

d. Separate driving electrical or mechanical machine connected by a coupling, clutch or belt."

*Id.* The business interruption portion of the coverage includes similar definitions.

This policy was in effect at the time of the failure of the drum tire. Upon notice of the claim, Cincinnati sent an agent to the site to investigate. The agent determined that the loss was not covered because the failed drum tire was not a gear (i.e., a mechanical device used for the transmission of mechanical power). Cincinnati later sent a letter to BACT stating that the policy "excludes the machines that do the work of production in the plant." *Record* at 40. The letter went on to state that Cincinnati's examination of the plant "confirmed that the drum mixer that broke down is clearly a production machine." *Id.* Cincinnati thus denied the claim because the policy exclusion for production machines controlled, and therefore the loss was not covered.

BACT filed its complaint on August 21, 1997, alleging that Cincinnati breached its agreement by refusing to pay BACT's claim for property loss and business interruption.

On July 13, 1998, BACT moved for partial summary judgment seeking a judgment against Cincinnati solely on the issue of liability. Finding no genuine issue of material fact, the trial court granted BACT's motion and entered final judgment in its favor in the amount of $243,919.84, which included $220,000.00 for business interruption loss and $23,919.84 for expenses. The trial court denied BACT's request for pre-judgment interest. The parties now appeal.

## DISCUSSION AND DECISION

### I. Coverage under insurance policy

■ Resolution of the coverage dispute depends upon whether the drum tire on the drum mixer plant is an "object" covered by the policy or instead is a "production machine" excluded from coverage. BACT argues that the drum tire is an "object." Cincinnati concedes that the drum tire is an "object." However, it contends that because the drum ring is an integral part of the mixing drum, the ring is excluded from coverage because the ring actually fits the definition of a "production machine." In fact, Cincinnati seems to argue that the entire plant, including most of its component parts, is a production machine for which no coverage extends. Further, Cincinnati claims that although the policy provides exceptions to the exclusion of production machines, the drum tire does not fit within any of these exceptions.

The purpose of summary judgment is to terminate litigation where there is no factual dispute and which can be determined as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind.Ct.App.1994). In reviewing the grant of a summary judgment, we apply the same standard as the trial court. *Id.* Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Here, there are no genuine issues of material fact. Rather, we are presented with a question of interpretation of the terms of the insurance policy as a matter of law.

■ The interpretation of an insurance policy is particularly suited for resolution by summary judgment. *Stevenson v. Hamilton Mut. Ins. Co.,* 672 N.E.2d 467, 471 (Ind.Ct.App.1996), *trans. denied.* Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. *Travelers Indem. Co. v. Summit Corp. of America,* 715 N.E.2d 926, 936 (Ind.Ct.App.1999). Policies are to be strictly construed against the insurer whenever an ambiguity exists. *Id.* This is particularly true where a policy excludes coverage. *Id.* The rationale behind strict construction in such cases is that " 'the

insurer drafts the policy and foists its terms upon the [insured].'" *Stevenson,* 672 N.E.2d at 471 (quoting *Sutton v. Littlepage,* 669 N.E.2d 1019, 1021 (Ind.Ct. App.1996)). The insurer is therefore bound by the plain, ordinary meaning of the words as viewed from the perspective of the insured. *Id.* Ambiguity in an insurance policy exists when the language is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to the meaning of the policy language. *Anderson v. State Farm Mut. Auto. Ins. Co.,* 471 N.E.2d 1170, 1172 (Ind.Ct.App.1984).

We conclude that an ambiguity does exist in the policy language. Reasonably intelligent persons could honestly disagree about whether a "production machine" includes the drum tires attached to the drum mixer. A machine is after all nothing more than its component parts. Reasonable persons therefore could disagree about whether the policy exclusion for a "production machine" also applies to the drum tires. Consequently, we must attempt to give effect to the reasonable expectations of the insured and construe the policy to further its basic purpose of indemnifying the insured for its loss. *See Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992).

Our review of the Record reveals that the drum tire does not function to process, form, shape, cut, grind or convey either raw materials, materials in process, or finished products. This is the function of the drum mixer. The drum tire never comes into contact with the asphalt being produced inside the drum mixer. The drum tire instead functions to transfer power from the four external electric motors to the drum, thereby causing the drum to turn and mix the asphalt. The drum tire is a covered "object" under the policy in that it is a "mechanical ... apparatus used for the generation, transmission, or utilization of mechanical power." *Record* at 29. While the drum tires are certainly a part of the drum mixer, we cannot find that

they clearly constitute a production machine, as that term is defined in the policy, so as to be excluded from coverage.

Cincinnati nevertheless maintains that because the drum tires are parts that are required to make the drum mixer operate they are such an integral part of the drum mixer that they therefore constitute a "production machine." We disagree. While it is no doubt true that the drum tires are necessary to make the drum mixer function as a drum mixer, this does not mean that the drum tires are a "production machine." We decline to adopt such a broad definition, especially given the policy's own definition that a "production machine" is a device that "processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in the process or finished products." *Record* at 29. Had Cincinnati intended to exclude the drum rings from coverage, it could have explicitly done so in the policy language. Cincinnati sent a representative to inspect BACT's facility prior to making a coverage recommendation, and therefore had the opportunity to unmistakably and unambiguously exclude the drum tires from coverage. Cincinnati failed in this respect.

Accordingly, the trial court did not err in determining that the damaged drum tire was covered by the policy. We therefore affirm the trial court's grant of summary judgment in favor of BACT.

## II. Prejudgment interest

On-cross appeal, BACT claims that the trial court erred when it failed to award prejudgment interest in its favor. We agree with BACT.

Prejudgment interest may be recovered as additional damages when necessary to fully compensate an injured party for its loss. *Dahlin v. Amoco Oil Corp.,* 567 N.E.2d 806, 813 (Ind.Ct.App.1991), *trans. denied.* We review the trial court's decision for an abuse of discretion, focusing on the trial court's threshold determination of whether the facts satisfy the test for prejudgment interest. *Harlan*

*Sprague Dawley, Inc. v. S.E. Lab Group, Inc.*, 644 N.E.2d 615, 617 (Ind.Ct.App. 1994), *trans. denied* (1995).

■■■■ Prejudgment interest is awarded where the damages are "ascertainable in accordance with fixed rules of evidence and accepted standards of valuation" at the time the damages accrued. *Dale Bland Trucking, Inc. v. Kiger*, 598 N.E.2d 1103, 1106 (Ind.Ct.App.1992), *trans. denied*. After it has been determined that a party is liable for damages, prejudgment interest is appropriate only when a "simple mathematical computation" is required. *Id.* Yet, it has been allowed even where some degree of judgment must be used to measure damages. *Harlan Sprague Dawley*, 644 N.E.2d at 618. Prejudgment interest is awarded to fully compensate an injured party for the lost use of money. *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 876 (Ind. Ct.App.1991). Prejudgment interest is computed from the time the principal amount was demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate. *Id.*

Here, the business interruption policy specifies the amount that BACT, as the insured, was to receive if there was a mechanical failure. The policy provides that BACT was to receive $20,000.00 per day for each day the asphalt facility was inoperable. Thus, the amount of the claim under the business interruption portion of the policy represents an ascertainable amount. The trial court only had to engage in a simple mathematical computation that involved multiplying the number of days the facility was inoperable by $20,0000.00. The Record reveals that the facility was inoperable for a total of twelve business days. Thus, after subtracting the $20,000.00 deductible, BACT's damages were $220,000.00. BACT also incurred additional expenses of $23,919.84, which included tool rental, parts, and employee compensation. The total loss thus amounted to $243,919.84. The trial court awarded BACT this amount in damages. Yet, it failed to award nineteen months of interest at the statutory rate of eight percent per annum. This amount was $30,-896.15. Both parties stipulated to this amount of prejudgment interest.

We find that although the trial court may have had to engage in a mathematical computation and to exercise some degree of judgment in measuring damages, the damages were readily ascertainable. Further, after the entry of summary judgment in favor of BACT, the parties stipulated that, if prejudgment interest was to be awarded, the amount of prejudgment interest was $30,896.51. Still, Cincinnati argues that BACT failed to establish the basis for which the expenses of $23,919.84 were derived. We reject this argument because both parties stipulated to the amount of damages, as well as the amount of prejudgment interest. Thus, Cincinnati cannot now argue that the expenses were not ascertainable or readily identified.

Accordingly, the judgment of the trial court is reversed as to that portion of the judgment that denies BACT prejudgment interest. The case is remanded to the trial court in order for prejudgment interest to be added to the judgment.

Affirmed in part, reversed and remanded in part.

SHARPNACK, C.J., and RILEY, J., concur.