**Ronald SMOCK, Panos, Inc., KTK, Inc. d/b/a The Body Shop a/k/a Body Shop Showclub, Ernest Strawn and Julia Strawn, Individually and as Co–Personal Representatives of the Estate of Michael Strawn, Deceased, Appellants–Plaintiffs,**

v.

**AMERICAN EQUITY INSURANCE CO., Appellee–Defendant.**

**No. 49A02–0009–CV–564.**

Court of Appeals of Indiana.

June 6, 2001.

Rehearing Denied August 1, 2001.

Stephen M. Terrell, Indianapolis, IN, Attorney for Appellants.

John T. Hume, III, Edward F. Harney, Jr., Hume Smith Geddes Green & Simmons, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Ronald Smock, Panos, Inc., KTK, Inc., d/b/a The Body Shop a/k/a Body Shop Showclub, and Ernest Strawn and Julia Strawn, individually and as co-personal representatives of the estate of Michael Strawn, deceased (collectively, the "Body Shop"), appeal the trial court's grant of summary judgment in favor of American Equity Insurance Co. ("American Equity"). The Body Shop raises multiple issues, but we need consider only whether the underlying claims are excluded under the insurance policy's assault and battery provision. We affirm.

The facts favorable to the nonmovants follow. KTK, Inc., ("KTK") owns and operates the Body Shop Showclub. On the evening of February 26, 1998, Ronald Smock was employed at the club as a bouncer when Michael Strawn, a patron at the establishment, became belligerent after having consumed both alcohol and marijuana. Smock removed Michael from the club. Steven Toscano, Michael's friend, offered to take Michael home.

Later, when Smock was removing trash, he observed Toscano and Michael engaged in a physical confrontation outside the club. Toscano insisted that Michael was too intoxicated to drive home, but Michael resisted Toscano's attempts to prevent him from driving. Michael struck Toscano and, at one point, Toscano's hand was on Michael's neck. Smock then performed a "sleeper hold," whereby he used his thumb and three fingers to place pressure on Michael's neck, rendering Michael unconscious.

Toscano placed Michael into the rear of his car through a hatch back, returned to the club to drink a "shot to calm down," and left the club. Record, p. 515. Toscano then checked on Michael, who was making a snoring sound. When Michael was returned to his home, however, he was dead. An autopsy revealed that Michael died from asphyxiation due to manual strangulation. The forensic pathologist could not determine whether death resulted from the "sleeper hold" or from com-

pression by a broader surface, such as a forearm or foot.[1]

Michael's parents, Ernest and Julia Strawn, individually and as co-personal representatives of Michael's estate (collectively, the "Strawns"), filed a wrongful death suit against Smock, KTK, and Toscano. In Count I of their amended complaint, the Strawns averred that Smock and Toscano negligently caused Michael's death; that Smock was acting in the scope of his employment with KTK as a bouncer at the time; and that KTK is responsible under the theory of respondeat superior. The Strawns further claimed that KTK was negligent for having hired and trained Smock; for having adopted a policy avoiding police intervention; and for having "fail[ed] to provide proper safety procedures for their employees, including Ronald Smock." Record, p. 336. In Count II, the Smocks averred that "the acts of the Defendants were willful, wanton, and intentional with a reckless disregard for the consequences." Record, p. 337.[2]

At the relevant time, KTK was insured under a commercial general liability insurance policy issued by American Equity. The insurer commenced this declaratory judgment action against Smock, Panos, Inc.,[3] KTK, and the Strawns, seeking a determination that the Strawns' underlying claims were not covered under the terms of the insurance policy issued to KTK American Equity moved for summary judgment. The trial court entered extensive findings of fact and granted the insurer's motion. The Strawns appealed that decision; Smock, Panos, Inc., and KTK initiated a separate appeal. Those cases were consolidated for our review.

■■■ Initially, we recognize that, although the trial court's findings and conclusions offer insight into the court's rationale for its judgment and facilitate our review, they are not binding on this court. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* Rather, when reviewing the entry of summary judgment, we stand in the shoes of the trial court. *Ousley v. Bd. of Comm'rs of Fulton County,* 734 N.E.2d 290, 293 (Ind. Ct.App.2000), *trans. denied.* We uphold the grant of summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.,* 698 N.E.2d 770, 773 (Ind.1998) (citing Ind. Trial Rule 56(C)). We construe the pleadings, affidavits, and designated materials in a light most favorable to the nonmovants and give careful scrutiny to assure that they are not improperly denied their day in court. *Hartford Acc. & Indem. Co. v. Dana Corp.,* 690 N.E.2d 285, 291 (Ind. Ct.App.1997), *trans. denied.*

■■■ Resolution of this case turns on interpretation of the insurance policy language. An insurer is bound by the plain, ordinary meaning of the words as viewed from the perspective of the insured. *Cincinnati Ins. Co. v. BACT Holdings, Inc.,*

---

1. Smock and Toscano were acquitted of criminal charges arising from the incident.

2. Count III related to Toscano alone, alleging negligence in his placement of Michael in the vehicle and in the operation of that vehicle.

3. Both Panos, Inc., and KTK are named as insured at the same address. Although Panos, Inc., defended this declaratory judgment action, the record does not disclose how that corporation is related to the underlying wrongful death suit. The trial court found that both KTK and Panos, Inc., owned and operated the Body Shop Showclub, but the record does not corroborate that finding. The Body Shop asserts error in that regard; however, we need not address that assertion of error, as it is not material to the question raised in this appeal.

723 N.E.2d 436, 440 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* Where policy language is clear and unambiguous, it is given its plain and ordinary meaning. *Meridian Mut.*, 698 N.E.2d at 773. If the language is ambiguous, the terms are construed in favor of the insured. *Id.* Policy language is ambiguous if reasonable persons could honestly differ as to its meaning. *Dana,* 690 N.E.2d at 295. Generally, the proper interpretation of an insurance policy, even if it is ambiguous, presents a question of law that is appropriate for summary judgment. *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 243 (Ind.2000).

■ The insurance policy at issue covers bodily injury only if caused by an "occurrence." Record, p. 79.[4] "Occurrence" under the policy is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Record, p. 89. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Record, p. 87. For purposes of this opinion only, we will assume without deciding that Michael's bodily injury resulted from an accident, an occurrence under the policy, as the Body Shop contends. The question then becomes whether the conduct that the Strawns claim creates liability of Smock and KTK is excluded from coverage by the "Assault and Battery" exclusion. That provision bars coverage for bodily injury:

(1) Expected or intended from the standpoint of any insured; or

(2) Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with prevention or suppression of an assault or battery, committed by any Insured or an employee or agent of the insured.

Record, p. 77.[5]

The second part of the exclusion specifically relates to batteries. The policy does not define the word, but an English language dictionary provides that a "battery" is "the act of battering, beating, or pounding ... [the] illegal beating or touching of another person." WEBSTER'S NEW WORLD DICTIONARY 118 (3rd college ed.1988); *see Cohen v. Peoples,* 140 Ind.App. 353, 355, 220 N.E.2d 665, 667 (1966) (stating that "[a]ny touching, however slight, may constitute assault and battery"). Here, the designated evidence shows that Smock placed a "sleeper hold" on Michael; Toscano physically struggled with Michael; and Michael was embroiled in a physical altercation with other patrons. What Smock did was a battery; what Toscano did was a battery, and what Michael did was a battery. *Cf. Sans v. Monticello Ins. Co.,* 676 N.E.2d 1099, 1104 (Ind.Ct.App.1997) (reversing the grant of summary judgment in favor of insurer where there was a genuine issue of material fact concerning intent to fire a handgun), *trans. denied.*

Clearly, under the exclusion, there is no coverage if bodily injury arose out of an employee's battery. It is uncertain whether Smock's act of placing a "sleeper hold" on Michael's neck caused Michael's death. However, to the extent the underlying wrongful death complaint asserts that KTK and Smock are liable for Smock's battery, the claims are excluded under the assault and battery provision.

---

**4.** We cite to the insurance policy where it first appears in the record.

**5.** The parties vehemently disagree as to whether Smock intended to inflict injury and, thus, whether the "expected or intended" part of the exclusion applies. Because we decide the case on other grounds, we need not discuss that issue.

We next consider the batteries committed by Toscano and Michael. The Body Shop maintains that the disputed exclusionary language is ambiguous because it is unclear whether there is coverage when the bodily injury arises out of batteries perpetrated by third persons, "such as [Michael's] repeated assaults on others, including Mr. Toscano." Appellant's Brief, p. 21.[6]

The assault and battery exclusion expressly precludes coverage for bodily injury arising out of an employee's acts or omissions "in connection with prevention or suppression" of a battery. Record, p. 77. By implication that includes batteries by third parties. No one disputes that Smock was an employee, acting within the scope of his employment at the relevant time. Thus, the Strawns' claim of negligence as it relates to Smock's failure to prevent or suppress batteries committed by Michael and Toscano are excluded by the assault and battery provision. A necessary corollary is that the exclusion also applies to KTK under the theory of respondeat superior.

In a separate argument, the Body Shop seeks to avoid the exclusion because the policy language does not expressly exempt from coverage the Strawns' negligence claims against KTK. In particular, the Strawns averred that KTK was negligent in its hiring, supervision, and training of Smock, as well as for its having adopted a policy avoiding police intervention. In essence, the Body Shop contends that Michael's bodily injury arose out of one or a combination of batteries, which in turn arose out of KTK's own negligence. *See Sphere Drake Ins. Co. v. Ross,* 80 Ohio App.3d 506, 609 N.E.2d 1284, 1286 (1992) (citations omitted).

As our previous discussion indicates, the assault and battery exclusion is not triggered only when the cause of action explicitly alleges an intentional assault or battery. *See United Nat'l Ins. Co. v. Entm't Group, Inc.,* 945 F.2d 210, 213–14 (7th Cir.1991) (applying Illinois law). Rather, the exclusion precludes coverage for a wide range of risks associated with a battery. *See Essex Ins. Co. v. Fieldhouse, Inc.,* 506 N.W.2d 772, 776 (Iowa 1993). In this case, the exclusion expressly applies to bodily injury arising out of an employer's acts or omissions relating to prevention or suppression of a battery. Thus, it applies to bodily injury arising out of Smock's, Toscano's, or Michael's batteries, or a combination thereof, even if the batteries could be seen to have been made possible by KTK's own negligence. *See id.; see also Hernandez v. First Fin. Ins. Co.,* 106 Nev. 900, 802 P.2d 1278, 1279–1280 (1990).[7]

In conclusion, Michael's bodily injuries arose out of Smock's battery, out of Smock's acts or omissions in connection with the prevention or suppression of Michael or Toscano's batteries, out of KTK's

---

6. In a separately identified issue, the Body Shop asserts that the structure of the policy itself creates an ambiguity due to the "nearly indecipherable format of insurance policies with their numerous forms and addendums." Appellant's Brief, p. 28. The Body Shop asks this court to "impose requirements of modern technology" on insurance companies, compelling a single, integrated insurance policy. *Id.* at 11. It is not for us to impose standards for the drafting of insurance policies. Rather, we construe them in accordance with rules that have developed from years of litigation about policy coverage.

7. For a discussion of cases analyzing various assault and battery exclusions in insurance policies, see Kimberly J. Winbush, Annotation, *Validity, Construction, and Effect of Assault and Battery Exclusion in Liability Insurance Policy at Issue,* 44 A.L.R.5th 91 (1996 & Supp.2000).

antecedent acts or omissions relating to the batteries, or out of a combination thereof. Consequently, the assault and battery exclusion precludes coverage for the claims raised in the Strawns' underlying wrongful death action. American Equity is entitled to judgment as a matter of law, and the trial court properly granted summary judgment in its favor. *See Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

KIRSCH, J., and MATTINGLY–MAY, J., concur.