The **BOARD OF WORKS OF the CITY OF LAKE STATION,** Indiana, and The City of Lake Station, Indiana, Appellants,

v.

**I.A.E., INC., Consulting Engineers,** Appellee.

No. 45A03–1007–CP–369.

Court of Appeals of Indiana.

Sept. 15, 2011.

Rehearing Denied Dec. 22, 2011.

Ray L. Szarmach, Merrillville, IN, Attorney for Appellants.

William Lazarus, Lazarus Law Offices, Flossmoor, IL, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The Board of Works of the City of Lake Station, Indiana, and the City of Lake Station (collectively, "Lake Station") appeal the jury's verdict and the trial court's rulings in favor of I.A.E. Consulting Engineers, Inc. ("I.A.E.").

We affirm but remand for further proceedings.

### ISSUES

1. Whether the jury's verdict is supported by sufficient evidence.

2. Whether the trial court abused its discretion in refusing to give Lake Station's Proposed Final Instruction No. 5 regarding a party who is first guilty of a material breach of contract.

3. Whether the trial court abused its discretion in giving the Court's Final Instruction No. 24 regarding prejudgment interest.

### FACTS

On June 19, 1990, I.A.E., designated "Consultant," and Lake Station, designated "Owner," entered into a written contract whereby I.A.E. was to provide engineering services, including "a location study; a design study; and [a] Combined Location–Design Study Report," for Lake Station in a project to provide improved roads and a bridge. (Lake Station's App. 59). The studies and report were to be developed in accordance with appropriate regulations and requirements as approved by the Federal Highway Administration ("FHWA") and geometric design standards and safety criteria as adopted by the American Association of State and Highway Transportation Officials and approved by the Indiana Department of Transportation ("INDOT").

The Lake Station Board of Works' minutes from 1990 indicate that the contract was the product of ongoing discussions between Lake Station and I.A.E. and that the Board of Works unanimously approved the contract on June 19, 1990. The total amount to be paid to I.A.E. for its work on the three phases of the project—design of the 15th Avenue extension, the Grand Boulevard extension, and the bridge—was $450,999. In relevant part, the contract stated:

SECTION IV—COMPENSATION

A. The CONSULTANT shall receive as payment for the work performed under this Agreement as indicated herein unless a modification of this Agreement is mutually approved by the OWNER and CONSULTANT in writing, as follow:

1. 15th Avenue from Lake Street to Old Hobart Road, and Old Hobart Road from 15th Avenue to State Road 51—LUMP SUM FEE OF $159,288.84.

2. Grand Boulevard from 15th Avenue to Central Avenue except for the Bridge Structure over 180–94—LUMP SUM FEE OF $130,430.25.

3. The Bridge Structure over 180–94—LUMP SUM FEE OF $161,280.00.

B. The CONSULTANT shall submit monthly invoices after the project has been approved for funding by the Indiana Department of Transportation, Federal Highway Administration, Regional Planning Commission, or any other funding agency. The OWNER agrees to pay all submitted invoices within forty-five (45) days from the date of each invoice.

14. *Abandonment and Termination*

The OWNER reserves the right to terminate or suspend this Agreement upon written notice.

A. If the OWNER shall abandon the services herein mentioned, the CONSULTANT shall deliver to the OWNER all data, reports, drawings, specification and estimates completed or partially completed and these shall become the property of the owner. The earned value of the work performed shall be based upon an estimate of the

portions of the total services as have been rendered by the CONSULTANT to the date of the abandonment and which estimate shall be as made by the OWNER in the exercise of its honest and reasonable judgment. The payments as made to the CONSULTANT shall be paid as the final payment in full settlement for his services hereunder.

(Lake Station's App. 48, 53).

On May 1, 1990, prior to the signing of the contract, Carl Miller, who was mayor at the time, told the Board of Works that I.A.E. could be hired, "but that they could not do any work until funding was in order." (Lake Station's App. 40). Subsequently, on October 26, 1990, INDOT approved a resolution granting $431,000 to Lake Station to begin actual construction of the project.[1] On February 27, 1991, Mayor Miller issued to I.A.E. a "proceed order" directing I.A.E. to begin the preparation of plans and specifications pursuant to the contract, adding that "payment will be made by [Lake Station] . . . upon availability of funds." (Lake Station's App. 64). I.A.E. began work on engineering designs needed to obtain state approval for the project, spending approximately $250,000 on salaries alone.

The project proceeded in various parts. The first part was a feasibility study, which included soil borings. As of May 24, 1995, Lake Station had made partial payment to I.A.E. for services rendered in the amount of $37,000 for the completion of the soil borings. Lake Station, through a May 24, 1995 letter written by Dewey R. Lemley, who was mayor at the time, acknowledged that it had an outstanding balance due to I.A.E. in the amount of $413,000. The letter stated that "[a]l-

though I.A.E. has substantially completed the plans and specifications, [Lake Station] is unable to pay the balance of the $413,000 for engineering services until [Lake Station] receives funding." (Lake Station's App. 104). Throughout Miller's and Lemley's terms as mayor, Lake Station continued to seek federal funding of the project. The record is devoid of any evidence that Miller or Lemley told I.A.E. that it would have to obtain financing to continue the project so that it could be paid. Under INDOT procedures, I.A.E. could not obtain final approval of the design plan until funding was secured by Lake Station.

Shirley Wadding became mayor in 1996, and shortly thereafter, orally informed I.A.E. president, Rama Talluri ("Rama"), that Lake Station would proceed only if I.A.E. found the money to finish the project. No additional funds were ever appropriated for the project, and on June 15, 1999, Mayor Wadding stated, "No more Project Rama. I'm happy it is over." (Tr. 588). On June 18, 1999, Rama, perceiving Lake Station's abandonment of the project, wrote Mayor Wadding, seeking payment of the $413,000 that former Mayor Lemley had acknowledged was owed, plus 10 percent interest.

On May 26, 2000, I.A.E. filed suit against Lake Station seeking payment under the contract for the work it had already completed for the project. Lake Station filed a motion for summary judgment, arguing that the receipt of funding was a condition precedent that had not been fulfilled. I.A.E. responded by filing a cross-motion for partial summary judgment, alleging that Lake Station had abandoned the project, triggering the contract's

---

1. The grant did not apply to the payment of pre-construction activities like those performed by I.A.E.

abandonment and termination provision. On August 11, 2003, the trial court granted Lake Station's motion for summary judgment, finding that payment was contingent on funding, and therefore the agreement between the parties had never become a binding contract.

I.A.E. filed an appeal, arguing that the trial court improperly ignored the abandonment and termination clause in its summary judgment order. This court held:

> Turning to the facts of the instant case, it is apparent that what constitutes an abandonment of this contract is unclear upon examination of the four corners of the document. The contract does not tell us whether the abandonment and termination clause was meant to apply only after funding was received for the project or for any work done by [I.A.E.] prior to that point. Additionally, the four corners of the contract do not specify whether this was a contingency contract that hinged on a condition precedent or whether it was a contract for services. There is also a dispute over who drafted this contract, and the document itself holds no answer.
>
> Furthermore, [Lake Station] admitted in oral argument that it was required to and did pay [I.A.E.] $37,000 for the work completed on phase one of the project. Nevertheless, [Lake Station's] position is that the rest of the work was contingent on receiving funding. However, there is no indication in the contract that some phases of the project were subject to a contingency while others were not. [Lake Station] argues

> that the contract specifically required them to pay for soil boring, but our examination of the record shows that this is not the case. The contract merely states that [I.A.E.] was not to subcontract any work, "except the soils investigation work." Thus, there remains the issue of whether [Lake Station] may have waived the condition precedent of receiving funding for the project.
>
> The designated evidence shows that [I.A.E.] has raised genuine issues of material fact, that is, the parties' intent in entering into the contract and possible waiver of the condition precedent. In short, reasonable people could differ as to the interpretation of the contract. Thus, various ambiguities exist in the contract that can only be resolved by an examination of the extrinsic evidence. As such, resolution of this matter was inappropriate for summary judgment.

*I.A.E. Inc. Consulting Engineers v. The Bd. of Works of the City of Lake Station and The City of Lake Station, Indiana*, No. 45A03–0310–CV–418, slip op. at 6–7, 817 N.E.2d 703 (Ind.Ct.App. Nov. 3, 2004) (citations omitted).

We remanded the case to the trial court for further proceedings, and a jury trial was held on whether Lake Station breached the contract and owed damages to I.A.E. After I.A.E. presented its case-in-chief, Lake Station moved for judgment on the evidence pursuant to Indiana Trial Rule 50.[2] The trial court denied Lake Station's motion for judgment on the evidence, and Lake Station presented evidence on its own behalf but does not claim in its appellate brief that it renewed its

---

**2.** Indiana Trial Rule 50(A) provides:

Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient

to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence.

motion for judgment on the evidence at the close of evidence. Ultimately, the jury returned a verdict in favor of I.A.E. and awarded $965,300 to I.A.E., an amount that included $413,000 in damages plus $552,300 in interest.

## DECISION

### 1. Sufficiency of the Evidence

■ Lake Station argues that I.A.E. failed to present sufficient evidence to support its claim for damages due to breach of contract.[3] To recover for breach of contract, a plaintiff must prove that (1) a contract existed; (2) the defendant breached the contract; and (3) the plaintiff suffered damage as a result of the defendant's breach. *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind.Ct.App.2007). Lake Station raises a series of arguments regarding the evidence presented by I.A.E. to support the elements of its claim, and we address each argument below.

In reviewing the sufficiency of the evidence in civil cases, we determine whether there is substantial evidence of probative value supporting the judgment. *Wolfe*, 867 N.E.2d at 595–96. We neither weigh the evidence nor judge the credibility of witnesses but consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Id.* at 596.

### a. Breach by I.A.E.

Lake Station contends that I.A.E., not Lake Station, breached the contract. Lake Station argues that I.A.E. made a conscious business decision in 1994 not to complete its duties under the contract after the project received a low rating on the Transportation Improvement Plan ("TIP") list set by the Northwest Indiana Regional Planning Commission ("NIRPC"). A high rating on the TIP list ensures that federal funding for a project will be provided, while a low rating ensures the opposite. Lake Station maintains that I.A.E. should not recover on its claims for damages because it was I.A.E.'s business decision, not Lake Station's inaction, which resulted in the project's ultimate failure to obtain funding. In short, Lake Station contends that I.A.E. realized in 1994 that it would never be paid, and it made a business decision to cut its losses by stopping work on the project. Thus, Lake Station argues that I.A.E. was the first party to breach the contract.

■ The evidence most favorable to the verdict shows, however, that I.A.E. knew that sometimes a change in priorities could

3. In its Appellant's Brief, Lake Station set forth its argument regarding the lack of evidence by contending that the trial court erred in denying its motion for judgment on the evidence. However, following the trial court's denial of Lake Station's motion for judgment on the evidence, it presented evidence on its own behalf and apparently did not renew its motion for judgment on the evidence at the close of evidence. Therefore, any appeal of the denial of Lake Station's judgment on the evidence motion is waived based on its subsequent presentation of evidence. *See Wolfe v. Estate of Custer*, 867 N.E.2d 589, 595 n. 5 (Ind.Ct.App.2007), *trans. denied; see also Davidson v. Bailey*, 826 N.E.2d 80, 87 n. 9 (Ind.Ct.App.2005) (noting that a defendant waives any alleged error regarding the denial of a motion for judgment on the evidence when he moves for judgment on the evidence and then introduces evidence on his own behalf after the motion is denied); Ind. Trial Rule 50(A)(6) ("A motion for judgment on the evidence made at one stage of the proceedings is not a waiver of the right of the court or of any party to make such motion ... except that error of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted."). Despite Lake Station's waiver of the denial of its motion for judgment on the evidence, we will address its argument as a sufficiency challenge.

render a project more likely to receive funding in the future and that I.A.E. was willing to wait for such a change. Steven Strains, a transportation planner and NIRPC director for thirty-six years, testified that a project's rating changes according to various circumstances. Thus, a project may move up or down the TIP list because of various factors, including a city's showing of or lack of interest in the project. Strains also testified that if a city, town, or county does not show sufficient interest in the project, then it may be removed from the list.

Former Mayors Miller and Lemley never told I.A.E. they had ceased trying to obtain funding and/or to discontinue work on the project. I.A.E. could not obtain final approval of the final design plan until Lake Station obtained funding; however, being aware of the effect of a change of priorities and the possibility that this change would result in funding, I.A.E. determined to perform the contractual duties that were under its control. The evidence favorable to the verdict shows that I.A.E. did perform these contractual services, short of the final design plan, which could not be approved before funding. Rama testified that he refrained from billing Lake Station for the work done by I.A.E. up to the June 1999 point that then-Mayor Wadding informed him of Lake Station's abandonment of the project. There is sufficient evidence in the record to support the conclusion that I.A.E. did not make a business decision in 1994 to quit working on the project.

### b. Nonperformance

Lake Station also contends that I.A.E. failed to present sufficient evidence to support its claim for payment of damages under the terms of the lump sum contract because the evidence indicates that the final design plan was never approved. Thus, Lake Station contends that I.A.E.'s nonperformance of the contract prevents recovery of the lump sum.

■ Rama testified that I.A.E. was not able to obtain final approval of its plans because of a lack of funding at the time, and INDOT "clearly told us 'Do not send any more drawings or tracings until you get funding.'" (Tr. 233). Rama also testified that the plans prepared by I.A.E. for the project were complete and that there was nothing else that I.A.E. could do without funding. Elena Veksler, INDOT supervisor in the road design section, testified that she knew of no project that had received final design approval before funding was in place. She further testified that INDOT would have approved I.A.E.'s final designs had funding been in place. Thus, the evidence showed that Lake Station's breach, consisting of inactivity and failure to procure funding, caused INDOT to withhold review and design approval of the final plans submitted to INDOT by I.A.E.

The evidence most favorable to the verdict shows that I.A.E. was prevented from completing its contractual obligations because of Lake Station's failure to obtain funding. Thus, it was Lake Station's actions, or lack thereof, that prevented I.A.E. from fulfilling the final service—procurement of approval of the final design plans by INDOT—under the lump sum contract. Lake Station cannot take advantage of its own breach to relieve itself of its contractual obligations. *See Rogier v. Am.Testing and Eng'g Corp.*, 734 N.E.2d 606, 620 (Ind.Ct.App.2000), *trans. denied.*

### c. Condition precedent and abandonment

■ Lake Station further contends that I.A.E. failed to present sufficient evidence to show that Lake Station either waived the condition precedent (funding) under the contract or that it abandoned

the contract. Before discussing the waiver of the condition precedent of payment, we again note that this court previously held that whether a condition precedent existed under the contract between Lake Station and I.A.E. is a question of fact. Even if we assume that the facts establish a condition precedent, we must conclude that the jury could have reasonably found that Lake Station's partial payment of $37,000 and former Mayor Lemley's acknowledgement were sufficient to support a finding of waiver. Furthermore, failure of any condition precedent was caused by Lake Station's inaction, and a party "may not rely on the failure of a condition precedent to excuse performance where that party's own action or inaction caused the failure." *See Rogier*, 734 N.E.2d at 621.

▆▆ With regard to abandonment, we note that "whether there has been an abandonment is a question of fact." *Rogier*, 734 N.E.2d at 619 (quoting *Baker v. Estate of Seat*, 611 N.E.2d 149, 152 (Ind. Ct.App.1993)). The fact of an abandonment may be inferred from the conduct of the parties and attendant circumstances. *Id.*

▆ Wadding took office in 1996, and in June 1999, while acting as mayor of Lake Station, specifically told Rama that the project was "over." This statement was a clear indication of abandonment of the project by Lake Station.

I.A.E. provided substantial evidence of probative value that supports the jury's verdict. Although Lake Station cites evidence to the contrary, we will neither reweigh the evidence nor assign credibility to the witnesses.

## 2. *Proposed Instruction*

Lake Station contends that the trial court abused its discretion in refusing to

give its Proposed Instruction No. 5, which stated:

> A party to a contract who is first guilty of a material breach of the contract cannot complain if the other party thereafter refuses to perform. Where a contract is not performed, the party that is guilty of the first breach is the one upon whom rests all liability for the nonperformance and that party cannot enforce the contract or recover damages against the other party should that other party subsequently breach the contract.
>
> Where both parties are in default under the terms of their contract, neither of them has a claim against the other for breach of contract.

(Lake Station's App. 29) (citing *Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48, 52 (Ind.Ct.App.1986) and *Harris v. Bradley*, 9 Ind. 166 (1857)).

▆ Instruction of the jury is left to the sound discretion of the trial court, and we review the refusal to give a tendered instruction for an abuse of discretion. *Davis v. Garrett*, 887 N.E.2d 942, 947 (Ind. Ct.App.2008), *trans. denied.* We will not reverse unless the trial court's refusal prejudiced a party's substantial rights. *Id.* at 948. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Wal–Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893 (Ind.2002).

Here, Lake Station's sole argument that the trial court abused its discretion in refusing to give the proposed instruction is summarized in the penultimate paragraph of Lake Station's brief on this issue, wherein it states:

> There is substantial evidence in the record to support the giving of Defendant's Proposed Final Instruction No. 5 re-

garding first breach. There is substantial evidence on the question of whether there was a material breach by either party and when it occurred. [Lake Station] argues that there is substantial evidence on the willful conduct of I.A.E. failing to perform after September 1994 and the jury should have been allowed to apply that evidence with the first breach Instruction No. 5.

Lake Station's Br. at 26.

The trial court, however, did not refuse to give the tendered instruction on the basis that the instruction was not supported by the evidence in the record. The trial court refused to give the proposed instruction because it was "somewhat confusing" and because other instructions were sufficient to cover "the issues that are inherent" in Proposed Instruction No. 5. (Tr. 983–84). Lake Station's argument in its appellant's brief—aimed at showing the tendered instruction is supported by evidence in the record-is directed to a non-issue.

■■■ Lake Station does argue the sufficiency of other instructions in its reply brief. However, a party that raises an argument for the first time in its reply brief waives the argument on appeal. *See Roman Catholic Archdiocese of Indianapolis, Inc. v. Metro. School Dist. of Lawrence Twp.*, 945 N.E.2d 757, 766 (Ind.Ct. App.2011).

3. *The Trial Court's Instruction on Prejudgment Interest*

Lake Station contends that the trial court abused its discretion in giving Final Instruction No. 24, which instructs the jury about the issue of prejudgment interest. Lake Station argues that the evidence presented at trial does not support the giving of the instruction.

The instruction reads:

Under Indiana law, an award of prejudgment interest in a contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. The test for determining whether an award of pre-judgment interest is appropriate is whether the damages are ascertainable as of a particular time. If you find that I.A.E. is entitled to damages under the contract, and that the amount of damages were readily ascertainable as of a particular time, then I.A.E. would be entitled to an award of pre-judgment interest.

The statutory rate of pre-judgment interest in Indiana when a contract does not contain one is eight percent (8%) per year. Pre-judgment interest is computed from the time the principal amount was due and is allowable at the permissible statutory rate when no contractual provision, as here, specifies the interest rate.

(Lake Station's App. 32).

■■■ Prejudgment interest may be recovered as additional damages when necessary to fully compensate an injured party for its loss. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 440 (Ind.Ct.App.2000), *trans. denied.* Prejudgment interest is awarded where "the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued." *Id.* at 441. After it has been determined that a party is liable for damages, prejudgment interest is appropriate only when a "simple mathematical computation" is required. *Id.* However, it has been allowed even where some degree of judgment must be used to measure damages. *Id.* Prejudgment interest is awarded to fully compensate an injured party for the lost use of money. *Id.* It is computed from the time the principal

amount was demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate. *Id.*

Here, Lake Station objected to the instruction because it believed the evidence regarding the amount of damages was in dispute and that the damages were not readily ascertainable at a certain time. The trial court overruled the objection on the basis that Mayor Lemley's letter indicated Lake Station's admission of the amount due to I.A.E. Thus, the court reasoned that the jury's determination of prejudgment interest due would be a matter of a simple mathematical computation.

 We cannot say that the trial court abused its discretion in determining that the letter allowed for the determination of the amount of damages without reliance upon the exercise of a degree of judgment. The letter stated Lake Station's acknowledgment of a specific amount owed, and the jury needed only to make a simple mathematical computation of the statutory rate from the time of demand for damages to determine the amount of interest owed.

Lake Station relies on *Clark v. Hunter,* 861 N.E.2d 1202, 1208 (Ind.Ct.App.2007) and similar cases for the proposition that the trier of fact in the instant case had to exercise its judgment to ascertain the amount of damages. Lake Station specifically relies on *Clark,* alleging that its facts "are similar to the facts in this case." Lake Station's Br. at 29. In *Clark,* however, the trier of fact was required "to exercise its judgment to assess the amount of damages at 80% of the contract price." *Id.* No similar exercise was required in the instant case. Accordingly, *Clark* and similar cases are inapposite.

 Although Lake Station does not question the computation of prejudgment interest, we raise the issue *sua sponte* as part of our duty to conserve public funds. When there is no contractual agreement for the payment of interest, such as in this case, interest on a damage award "should not be compounded but calculated as simple interest." *Hudson v. McClaskey,* 641 N.E.2d 36, 43 (Ind.Ct.App.1994). *See also Firstmark Standard Life Ins. Co. v. Goss,* 699 N.E.2d 689, 693–94 (Ind.Ct.App.1998), *trans. denied* (interpreting Ind.Code § 24-4.6-1-104, and holding that absent a contractual agreement by the parties, "the trial court should have awarded only simple interest in determining prejudgment interest"). Accordingly, we remand with instructions that the trial court recalculate the prejudgment interest award, using simple interest from the date of I.A.E.'s demand.

Affirmed and remanded for further proceedings consistent with this opinion.

RILEY, J., and BARNES, J., concur.