**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DERICK W. STEELE**
Raquet & Vandenbosch
Kokomo, Indiana

ATTORNEY FOR APPELLEE:

**RONALD J. TIRPAK**
Schenkel Tirpak & Kowalczyk
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FORTUNE MANAGEMENT, INC., | ) | |
| | ) | |
| Appellant-Cross Appellee, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1110-CC-1131 |
| | ) | |
| DESIGN COLLABORATIVE, INC., | ) | |
| | ) | |
| Appellee-Cross Appellant, | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable Thomas R. Lett, Special Judge
Cause No. 34D01-0506-CC-631

**July 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

## STATEMENT OF THE CASE

Fortune Management, Inc. ("Fortune") appeals the trial court's judgment in favor of Design Collaborative, Inc. ("Design"). Design cross appeals the trial court's partial grant of Fortune's motion to correct error.

We affirm in part and reverse in part.

## ISSUES

1. Whether the trial court erred in determining that Fortune and Design had entered into an enforceable oral contract.

2. Whether Fortune and Design entered into a contract modification that absolved Fortune of paying amounts owed pursuant to Design's performance of the oral contract obligations.

3. Whether Design billed for work not authorized by its oral contract with Fortune.

4. Whether the trial court erred in determining in part that Design was not entitled to prejudgment interest.

## FACTS

Design is a corporation involved in providing architectural, engineering, design, and similar services. Fortune is a corporation involved in real estate development, management, and marketing.

In 2002, Fortune contacted Design and asked it to provide design services pertaining to the conversion of an Anderson, Indiana building into apartment units. Design provided these services pursuant to a written contract. Toward the end of the

2

project, Fortune asked Design to perform services in a Fortune project to build apartment units in Lawrenceburg, Indiana ("the Lawrenceburg Project"). Design also provided architectural, engineering, design, and similar services in a number of other Fortune projects. Subsequent to the Anderson project, Design provided its services to Fortune based upon oral contracts.

With reference to the Lawrenceburg Project, Fortune and Design entered into an agreement whereby Design would provide architectural, engineering, and design services that would be billed on an hourly basis. During the course of the project, the focus changed from the building of apartment units to the construction of townhomes. Design performed its services on the townhome development pursuant to a negotiated fee of $70,000.

During the initial course of the Lawrenceburg Project, Design provided documents to Fortune pertaining to the design development, schematic design, and construction document phases of the apartment unit development. Design also provided invoices based on the agreed hourly rates.

During the later course of the project, Design provided documents to Fortune pertaining to the design development, schematic design, and construction document phases of the townhome development. Design again provided invoices, this time based on the agreed negotiated fee.

3

Fortune did not pay any of the Lawrenceburg Project invoices. Indeed, at some point during the project, Fortune informed Design that it should seek payment from an organization called Nova Investments, an investor in the project and the owner of land on which the townhomes would be built. In a June 8, 2004 letter, Design agreed to attempt collection from Nova partners Holt Hoffman and Matt Golitko, but it did not agree to release Fortune from responsibility to pay the invoices. Neither Nova, Hoffman, nor Golitko paid the invoices, and on March 11, 2005, Design filed a complaint against Fortune. In the complaint, Design alleged that Fortune owed $26,990 plus interest for services provided pursuant to the original plan to build apartment units and $43,750 plus interest for services provided pursuant to the later plan to build townhomes. After Fortune refused to make payment, a bench trial was held. The trial court made the following pertinent findings of fact:

> That the architectural, engineering, and design services provided by Plaintiff to and at the request of Defendant were ordinary, normal and customary in the industry.

> That architectural, engineering and design professionals involved in the industry would normally expect to be paid for the services provided to Defendant by Plaintiff.

> That the architectural, engineering and design services provided to Defendant by Plaintiff were necessary for the furtherance of the apartment development project and the town home development project.

> That as a result of providing architectural, engineering and design services to Defendant relating to the apartment structures and town home structures, Plaintiff expended time and effort.

That as a result of obtaining the architectural, engineering and design services relating to the apartment structures and town house structures, Defendant furthered its development project, benefitting therefrom.

(App. 322-23).

The trial court made the following pertinent conclusions of law:

Plaintiff, Design Collaborative, Inc., and Defendant, Fortune Management, Inc., entered into a contract relating to the design and development of apartments and town houses.

* * * *

Plaintiff provided invoices to Defendant for the architectural, engineering, design and associated services itemizing the amounts due for the architectural, engineering, design and associated services provided to Defendant by Plaintiff. This was in accordance with the terms and conditions of the contract between the parties.

The Defendant did not object to the invoices so provided.

The amount invoiced by Plaintiff to Defendant for the architectural, engineering, design and associated services was according to the contract of the parties and was fair and reasonable under industry standards.

The contract between Plaintiff and Defendant was silent as to the entitlement to interest upon unpaid amounts. Where an agreement of the parties thereto is silent as to the entitlement to interest, the statutes of Indiana provide therefore.

Defendant failed to make payment of the amounts due and invoiced for the architectural, engineering, design and associated services provided to Defendant by Plaintiff and therefore breached the contract between Plaintiff and Defendant.

(App. 323-24).

5

The trial court entered judgment in favor of Design for $26,990.00 in damages and $13,687.47 in prejudgment interest in relation to the apartment unit development and $43,750.00 in damages and $22,229.70 in prejudgment interest in relation to the townhome development.

Fortune filed a motion to correct error alleging, among other things, that the award of prejudgment interest was erroneous. The trial court granted the motion as to the prejudgment award involving the damages for the apartment unit development.

## DECISION

As noted above, the trial court issued detailed factual findings and conclusions of law. Indiana Trial Rule 52(A) provides that when the trial court issues such findings and a corresponding judgment, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Factual findings are clearly erroneous if there is no evidence or reasonable inference from the evidence to support the findings, and we review only the evidence and reasonable inferences therefrom that are favorable to the judgment without reweighing the evidence or reassessing the credibility of the witnesses. *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), *trans. denied.* "We owe no deference to the trial court, however, on matters of law, reviewing these de novo." *Id*.

6

1.      Existence of Contract

The existence of a contract is established by the evidence of an offer, acceptance, consideration, and a manifestation of mutual assent. *Troutwine Estates Dev. Co. v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 897 (Ind. Ct. App. 2006), *trans. denied*. To enter into an oral contract, the parties must agree to all essential terms of the contract. *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 883 (Ind. Ct. App. 2000). Whether a set of facts establishes a contract is a question of law. *Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005), *trans. denied*. However, determination of the terms of an oral contract is a matter for a trier of fact. *Thomas J. Henderson, Inc. v. Leibowitz*, 490 N.E.2d 396, 399 (Ind. Ct. App. 1986). Findings are clearly erroneous only if the record contains no facts to support them, whether directly or by inference. *Family Video Movie Club, Inc. v. Home Folks, Inc.*, 827 N.E.2d 582, 585 (Ind. Ct. App. 2005).

Here, Fortune does not contend that there is insufficient evidence to establish offer, acceptance, and consideration. It does, however, claim that there is no oral contract because there was no meeting of the minds regarding the timing of the completion phases.[1]

Our review of the transcript discloses that Kevin Scully, an architect and principal for Design, testified that he met with Fortune representative Bill Ritter at the beginning of the Lawrenceburg Project, and they agreed that Design would proceed through the

---

[1] Fortune also argues that there was no meeting of the minds on the issue of prejudgment interest. However, Fortune makes no argument to establish that prejudgment interest is an essential term of the contract.

7

regular architectural phases to determine the advisability of building the apartment units. The parties agreed that Design would be paid on an hourly basis.

When Fortune changed its emphasis to building townhomes, Scully met with Fortune President, Scott Pitcher, and they negotiated a fixed fee amount for the various phases. Scully testified that Pitcher told him that "the project was on a very fast track and we had to move very quickly to get the project done . . . . There was a deadline that was in September [2004] I believe for an appointment with the bond bank." (Tr. 92). In order to be ready for the meeting with the bank, Design was required to

> [C]ompletely design the project so that meant go through the whole planning phase of understanding what it was we were going to put on the site, how many, how many we could fit, and then do all the architectural drawings, construction drawings, engineering detailing, and so forth that is required to construct the project and get it approved through the State of Indiana.

(Tr. 93).

As the trier of fact, the trial court possessed the discretion to determine the terms of the contract. In exercising its discretion, the trial court found Scully's evidence sufficient to show the timing agreed by the parties, evidence that was bolstered by trade usage and course of dealing. Also, in exercising its discretion, the trial court found Scully's testimony more credible than any evidence presented by Fortune.

We find as a matter of law that the set of facts presented to the trial court is sufficient to establish that the parties were operating under a valid oral contract. In short, the trial court's finding is not clearly erroneous.

8

2. <u>Existence of a Modification</u>

On June 8, 2004, after Fortune had failed to pay Design any of the hourly or established fees due under the oral contract, Design sent a letter that summarized discussions between Fortune and Design on a number of mutual projects. Fortune argues that the letter was a settlement offer to modify Fortune's obligation to pay the fees for the Lawrenceburg Project and to pass that obligation to Hoffman and Golitko. The letter was signed by both parties.

A contract modification is a contract separate from the original contract. *Hamlin v. Steward*, 622 N.E.2d 535, 539 (Ind. Ct. App. 1993). Courts interpret such contracts using ordinary contract principles. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008). Thus, the goal of courts in interpreting the contract is to ascertain and give effect to the parties' intent. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations. *Id*. When a contract's terms are ambiguous or uncertain, and its interpretation requires extrinsic evidence, its construction is a matter for the fact finder. *Id*. A contract is ambiguous when its language is "susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Mid-States Gen. & Mech. Contracting Corp. v. Goodland*, 811 N.E.2d 425, 431 (Ind. Ct. App. 2004).

9

Here, the letter provided in pertinent part:

Thank you for taking the time to meet with us on 2/24/04 to discuss our past due invoices to [Fortune]. As we indicated, we feel it is always best to meet in person to work out any potential issues and to ultimately maintain a professional working relationship. We still consider [Fortune] a good client, enjoy the work you do and hope that we can continue to do work together.

This letter is to confirm the results of our meeting with you at your Kokomo office and subsequent conversations with [a Fortune representative], and we would ask you to review this letter and confirm these discussions.

* * * *

Project 2003.0056 Apartment Complex
Total of invoices of $26,990.00, which is to be paid directly by Holt Hoffman and Matt Golitko. [Design] will try and pursue obtaining payment from Holt and Matt on this invoice. We were concerned that the only way they would pay us is for them to work directly with us on the project and [Fortune] was OK with us working directly (as [Fortune] has a signed contract that he can fall back on to recover his fees). [Fortune] felt we should try to mitigate our damages with them to get payment.

Design will try our best to obtain payment from Holt Hoffman and Matt Golitko on this invoice. In the event [Design] cannot obtain direct payment from Holt Hoffman and Matt Golitko on the invoices, [Design] would like to be included with [Fortune] (both as plaintiffs) on legal action in court to collect payment. [Fortune] indicated that you had a contract with them to develop the property and [Design] should be included as part of this development.

* * * *

Project 2003.0087 Town-homes Project
Total of invoices is $43,750.00, which is to be paid directly by Holt Hoffman and Matt Golitko. [Design] will try and pursue obtaining payment from Holt and Matt on this invoice per the same note as on the Apartment project #2003.0056 above.

10

* * * *

As we discussed, [Fortune] is a good client and we will work with you during this difficult time. We want to maintain communication with you and if you have any questions feel free to contact [Scully] or myself [Design principal, Terrance Wagner]. Thanks again for meeting with us . . . . Good luck with your land sale.

(Fortune's Ex. D).

As noted above, Fortune reads the letter as a modification of its original contract that transfers the payment of the apartment unit and townhome invoices from Fortune to Hoffman and Golitko. Design, on the other hand, reads the letter as a continuing effort to obtain payment. Given Fortune's interpretation of the letter and the conspicuous lack of any language purporting to release Fortune from its obligations in the event that Hoffman and Golitko refused to pay, we find as a matter of law that the letter is ambiguous. Accordingly, we look to extrinsic evidence to ascertain the parties' intent.

Scully testified that discussions with Fortune, which had closed the Lawrenceburg Project and had failed to make payments on Design's invoices, disclosed that Hoffman and Golitko, as representatives of Nova, had expressed interest in taking over and completing the project. Scully also testified that the letter memorialized an attempt to "try and pursue the project with [Nova] to get paid for the work that we had done. And so this was an attempt to take the project to [Nova] to see if they could get financing and make the project proceed or help." (Tr. 164). Wagner, a Design principal, testified that the letter to Fortune was to obtain payment "from any source from which it might be

11

available." (Tr. 241). Wagner also testified that "if I would have been told to go to the Pope I would have probably gone to the Pope to try and get payment if he would have paid it, if he would have been involved in it in any way." *Id.* Wagner further testified that at the time the letter was written, Design was "still looking for payment . . . directly from [Fortune]." (Tr. 249).

While the trial court did not make a specific finding regarding the effect of the June 8, 2004 letter, its judgment in favor of Design shows that the court did not believe that the letter relieved Fortune of the duty to pay its debts. After reviewing the transcript, we also do not believe that the letter relieved Fortune of its duty to pay the Lawrenceburg Project debts.

3.      Mitigation of Damages

Fortune argues that Design neglected to mitigate its damages when it proceeded to create construction documents prior to completion of the prior two stages of the townhome project.

In general, a non-breaching party has a duty to exercise reasonable diligence to mitigate damages suffered as a result of a breach of contract. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 507 (Ind. Ct. App. 2007). The breaching party has the burden to prove that the non-breaching party has not used reasonable diligence to mitigate its damages. *Id.*

12

The oral contract between Design and Fortune required the townhome project to move as expeditiously as possible. Design proceeded to move expeditiously, not knowing that a breach was going to occur. Fortune has failed to prove that mitigation was necessary under the circumstances.

4.    Prejudgment Interest

As a cross-appeal, Design raises the issue of whether the trial court erred in granting Fortune's motion to correct error. The trial court concluded that its original judgment incorrectly added prejudgment interest on the damages awarded to Design on the apartment unit phase of the contract.

Prejudgment interest may be recovered as additional damages when necessary to fully compensate an injured party for its loss. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 440 (Ind. Ct. App. 2000), *trans. denied.* Prejudgment interest is awarded where "the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued." *Id.* At 441. After it has been determined that a party is liable for damages, prejudgment interest is appropriate only when a "simple mathematical computation" is required. *Id.* However, it has been allowed even where some degree of judgment must be used to measure damages. *Id.* Prejudgment interest is awarded to fully compensate an injured party for the lost use of money. *Id.* It is computed from the time the principal amount was

13

demanded or due and is allowable at the permissible statutory rate when no contractual provision specifies the interest rate. *Id*.

Here, the trial court merely multiplied the undisputed number of hours by the undisputed hourly rate to arrive at the damage award. The addition of prejudgment interest is allowed where this simple mathematical computation was used.

## CONCLUSION

The trial court did not err in finding that an oral contract existed between Design and Fortune and that damages were awardable for breach of that contract. In addition, the trial court did not err in giving no weight to the June 8, 2004 letter as a modification of Fortune's obligations under the oral contract. Furthermore, the trial court did not err in concluding that Fortune could not prevail on the mitigation of damages issue.

The trial court did err, however, in granting the motion to correct error. Accordingly, we remand with instructions that the trial court vacate its judgment on the motion to correct error and restore its original judgment.

Affirmed in part and reversed in part.

NAJAM, J., and RILEY, J., concur.