**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 06 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEVEN D. GROTH**
**BRIAN H. BABB**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**ADAM J. SEDIA**
Rubino Ruman Crosmer & Polen
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALEA LONDON, LTD., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1202-CT-83 |
| | ) | |
| RICHARD NAGY, JR., and, | ) | |
| CHRISTOPHER BUCKLER, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable William E. Davis, Judge
Cause No. 45D05-0412-CT-310

**July 6, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Alea London, LTD, ("Alea") appeals the trial court's entry of summary judgment in favor of Richard Nagy, Jr., and Christopher Bucker (collectively "the Plaintiffs") allowing them to use proceedings supplemental to enforce a judgment against Alea as the insurer of Copper Entertainment, Inc., d/b/a The Copper Penny Sports Bar and Grill ("The Copper Penny"). We reverse and remand.

**Issue**

Alea raises two issues, which we consolidate and restate as whether the trial court properly granted the Plaintiffs' motion for summary judgment and denied Alea's motion for summary judgment.

**Facts**

On April 30, 2004, Nagy and Buckler were at The Copper Penny in Hammond. Buckler accidently bumped into another patron causing her to spill her drink on herself. When she threw the remainder of her drink on Buckler, Buckler backed away with his hands in the air, and a "verbal exchange" took place. App. p. 63. In response, Anthony Aponte struck Buckler on the head with a bottle. When Nagy saw that Buckler, his friend, had been injured and that Aponte and Brandon Odonovich were leaving, Nagy followed the two men outside. As he exited The Copper Penny, Nagy was struck in the head with an object by Aponte and/or Odonovich and was rendered unconscious.

Nagy and Buckler filed a complaint against The Copper Penny, Aponte, and Odonovich alleging that the Plaintiffs were attacked by Aponte and Odonovich and that The Copper Penny failed to provide proper security. During the course of the

2

proceedings, Odonovich was never served with process and default judgment was entered against Aponte. In 2007, following a bench trial, the trial court found in part:[1]

> 7. Further, around 9:00 p.m. . . . an altercation took place between Christopher Buckler and an unknown female patron, who was also visibly intoxicated.
>
> 8. That Christopher Buckler accidentally bumped said female patron and she spilled a drink on herself and then threw the remainder of her drink on Christopher Buckler resulting in an altercation.
>
> 9. At said time and place Christopher Buckler backed away from the said female patron with his hands in the air and a verbal exchange took place between Mr. Buckler and the female patron.
>
> 10. Further, the Defendant Anthony Aponte apparently acting in defense of the unknown female patron struck Christopher Buckler in the head with a bottle causing injuries to Mr. Buckler.
>
> 11. The Court further finds that at the time of said altercation, the Plaintiff Richard Nagy, Jr. was seated at the bar and did not see the altercation between Christopher Buckler who was his friend and Anthony Aponte. However, he did see that his friend Mr. Buckler had been injured and saw the two individuals who were later identified as Anthony Aponte and Brandon Odonovich leaving [The Copper Penny's] premises. Mr. Nagy then followed Mr. Aponte and Mr. Odonovich outside [The Copper Penny] to try to determine what had taken place.
>
> 12. Further, as Mr. Nagy exited [The Coppery Penny], he was stuck in the head by an object by one or both of said individuals and was rendered unconscious.

---

[1] On appeal, the parties appear to agree that the absolute waiver of policy defenses is not an issue and that the trial court's findings and conclusions conclusively establish the facts surrounding the incident. Although we agree that the trial court's findings and conclusions are binding, we do not agree with the Plaintiffs' assertion that the findings and conclusions establish that their injuries were incurred in defense of others.

3

Id. at 62-63. The trial court entered judgment for Buckler and against The Copper Penny and Aponte in the amount of $25,000 and for Nagy and against The Copper Penny and Aponte in the amount of $45,000.

In 2009, the Plaintiffs filed a motion to enforce the judgment by proceedings supplemental against Alea as The Copper Penny's insurer under a commercial general liability coverage policy (the "Policy"). On July 14, 2011, the Plaintiffs moved for summary judgment against Alea. On August 25, 2011, Alea responded to the Plaintiffs' motion for summary judgment and filed a cross-motion for summary judgment. After the Plaintiffs replied, the trial court entered summary judgment in their favor and denied Alea's motion for summary judgment. Alea now appeals.

**Analysis**

Alea argues that the trial court improperly granted summary judgment in favor of the Plaintiffs and denied its motion for summary judgment. We review a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court. Perdue v. Gargano, 964 N.E.2d 825, 831 (Ind. 2012). "Summary judgment is appropriate only if the designated evidence reveals 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Ind. Trial Rule 56(C)). All facts and reasonable inferences drawn from the evidence designated by the parties are construed in the light most favorable to the non-moving party. Id. "We do not defer to the trial court's determination of the law." Id.

"Insurance policies are governed by the same rules of construction as other contracts, and their interpretation is a question of law." Masten v. AMCO Ins. Co., 953

4

N.E.2d 566, 569 (Ind. Ct. App. 2011), trans. denied. When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the policy, and we construe the policy as a whole and consider all of the provisions of the policy and not just the individual words, phrases or paragraphs. Id. "Because we construe insurance policies as a whole in each case, prior cases that focus upon similar or identical clauses or exclusions are not necessarily determinative of later cases because the insurance policies as a whole may differ." Id.

Further, where, as here, we interpret an endorsement to an insurance policy, the endorsement "'must be read together, construed, and reconciled with the policy to give effect to the whole.'" Id. (quoting Stevenson v. Hamilton Mut. Ins. Co., 672 N.E.2d 467, 473 (Ind. Ct. App. 1996), trans. denied). We construe the policy and relevant endorsements from the perspective of an ordinary policyholder of average intelligence. Id. Further, we will accept an interpretation of the contract language that harmonizes the provisions rather than one that supports a conflicting version of the provisions. Id.

If the language is clear and unambiguous, we give it its plain and ordinary meaning. Id. An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning; an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language. Id. at 569-70. "Ambiguities are strictly construed against the insurer, particularly where an exclusion of coverage is concerned." Id. at 570.

The Plaintiffs argue that summary judgment in their favor was proper because the incident was an "occurrence"[2] as defined by the Policy and because none of the Policy's exclusions apply. Relying on an endorsement containing an exclusion for assault and battery, Alea asserts that the Policy excludes coverage for the Plaintiffs' claims.

The Assault and Battery Exclusion provides:

This insurance does not apply to any claim arising out of:

A. Assault and/or Battery committed by any person whosoever, regardless of degree of culpability or intent and whether the acts are alleged to have been committed by the insured or any officer, agent, servant or employee of the insured or by another person; or

B. Any actual or alleged negligent act or omission in the:
   1. Employment;
   2. Investigation;
   3. Supervision;
   4. Reporting to the proper authorities or failure to so report; or
   5. Retention;
of a person for whom any insured is or ever was legally responsible, which results in Assault and/or Battery; or

C. Any actual or alleged negligent act or omission in the prevention or suppression of any act of Assault and/or Battery.

App. p. 30.

The Plaintiffs assert, "the Policy language excludes from coverage injuries resulting from battery, but provides coverage via an exception for injuries incurred to

---

[2] The Policy applies to bodily injury caused by an "occurrence," which the Policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." App. pp. 34, 43. The parties dispute whether the incident was an occurrence. However, because we conclude that the Assault and Battery Exclusion applies, it is not necessary to determine whether the incident was an "occurrence."

6

protect persons or property." Appellees' Br. p. 17. This argument for coverage is based on the Policy's Expected or Intended Injury Exclusion, which provides:

> **2.**    **Exclusions.**
> This insurance does not apply to:
>
> **a.**    **Expected or Intended injury**
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

App. p. 34. According to the Plaintiffs, "a harmonized reading of the policy language as a whole establishes that 'use of reasonable force to protect persons or property' is not an 'assault' or 'battery' and thus falls within the scope of coverage." Appellees' Br. p. 17.

This argument would require us to write the exception to the Expected or Intended Injury Exclusion into the Assault and Battery Exclusion, and we decline to do so. Our supreme court recognized "that each exclusion is meant to be read with the insuring agreement, independently of every other exclusion. If any one exclusion applies there should be no coverage, regardless of the inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions." Indiana Ins. Co. v. DeZutti, 408 N.E.2d 1275, 1278 (Ind. 1980) (citing Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 795 (N.J. 1979)). The Assault and Battery Exclusion does not include an exception for the protection of persons or property, and we decline to write the exception to the Expected or Intended Injury Exclusion into the Assault and Battery Exclusion.[3]

---

[3] Even if we were to conclude that the Assault and Battery Exclusion excepted "'bodily injury' resulting from the use of reasonable force to protect persons or property[,]" we do not believe this exception is

7

To the extent the Plaintiffs argue that Aponte's and Odonovich's actions do not fall within the Assault and Battery Exclusion's meaning of "battery" because they were justified, we are not persuaded. Although the policy does not define "battery," in interpreting an assault and battery exclusion of a policy that did not define battery, we have defined battery as "'the act of battering, beating, or pounding . . . [the] illegal beating or touching of another person.'" Smock v. American Equity Ins. Co., 748 N.E.2d 432, 435 (Ind. Ct. App. 2001) (quoting Webster's New World Dictionary 118 (3rd college ed. 1988)) (alteration in original), trans. denied.

The Plaintiffs seem to suggest that Aponte's and Odonovich's actions did not constitute as batteries because they were privileged—undertaken with authorization or justification. See, e.g., City of South Bend v. Fleming, 397 N.E.2d 1075, 1077 (Ind. Ct. App. 1979) ("A police officer in the lawful discharge of his duties is privileged to use only that force which is reasonable and necessary to effect an arrest. . . . If he uses unnecessary force his conduct is no longer privileged and he is answerable for an assault and battery."); Ind. Code § 35-41-3-2(c) ("A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."). According to the trial court's findings, Aponte struck Buckler in the head with a bottle as Buckler backed away from another patron with his hands in the air after accidently bumping into the patron and

---

applicable to these facts. Regardless of the fact that Aponte was "apparently acting in defense" of another patron, Buckler was backing away from the other patron with his hands in the air after accidently bumping into her when Aponte struck him in the head with a bottle. App. p. 63. Aponte's use of force was not reasonable. Further, Nagy was struck on the head when he followed Aponte and Odonovich outside The Copper Penny. Because Aponte and Odonovich were leaving, we are not convinced that Nagy's injuries were the result of Nagy protecting Buckler.

8

causing her to spill her drink. Nagy was struck on the head with an object when he followed Aponte and Odonovich outside the bar to try to determine what had taken place.

Although Aponte was "apparently acting in defense" of another patron when he struck Buckler and Nagy was injured when he tried to investigate the incident, nothing in the trial court's order suggests that the striking of Buckler and Nagy was justified. App. p. 63. As Alea points out, if the force used against Nagy and Buckler had been justified, there would have been no underlying liability on the part of the assailants. We fail to see how these facts, which gave rise to Aponte's and The Coppery Penny's liability in the first place, support the Plaintiffs' theory that the striking was justified and not within the meaning of the term "battery" under the Assault and Battery Exclusion. Because Aponte's and Odonovich's actions were batteries, the Assault and Battery Exclusion applies, and there is no coverage under the Policy for the Plaintiffs' claims.[4] Thus, the trial court should have granted Alea's motion for summary judgment and denied the Plaintiffs' motion for summary judgment.

## Conclusion

Because the Policy's Assault and Battery Exclusion applies and precludes coverage for the Plaintiffs' claims, the trial court improperly granted the Plaintiffs' motion for summary judgment and improperly denied Alea's motion for summary judgment. We reverse and remand for the entry of summary judgment in favor of Alea.

---

[4] Because we conclude that subsection A of the Assault and Battery Exclusion applies and excludes coverage for the Plaintiffs' claims, we need not address the parties' arguments regarding subsection C.

9

Reversed and remanded.

FRIEDLANDER, J., and MAY, J., concur.